BEDDINGFIELD *et al. v.* ESTILL & NEWMAN *et al.*[*]

*(Nashville.* December Term, 1906.)

1. **HUSBAND AND WIFE.** Estate by entirety. Survivor takes under grant, and not by inheritance from deceased.

   Where land is conveyed to husband and wife to hold as tenants by entireties, the survivor, upon the death of the other, becomes vested of the entire estate by virtue of the grant or deed conveying the property to them—the interest of the deceased being terminated by his or her death—and in such case the survivor does not inherit, acquire, or otherwise take, any interest or estate in the lands from or through the deceased husband or wife.

   Cases cited and approved:   Johnson v. Lusk, 46 Tenn., 115; Cole Mfg. Co. v. Collier, 95 Tenn., 121; Stuckey v. Keefe's Executors, 26 Pa., 397; Thornton v. Thornton, 3 Rand. (Va.), 179; Bertles v. Nunan, 92 N. Y., 156.

2. **SAME.** Husband feloniously killing wife takes no interest in her property, and question of forfeiture provided against in coustitution does not arise.

   Where the husband feloniously kills his wife, he acquires no estate in her property by virtue of his marital rights as surviving husband, and therefore has nothing in it to forfeit, and the question of forfeiture provided against by the constitutional provision that "no conviction shall work corruption of blood or forfeiture of estate" does not arise.

   Case cited and approved:   Box v. Lanier, 112 Tenn., 393.

3. **SAME.** Husband feloniously killing wife does not forfeit estate as tenant by entirety.

   The statute (Acts 1905, ch. 11) providing, in substance, that any person who shall feloniously kill, or procure to be killed,

---

[*]As to tenancy by the entireties, see note to Hiles v. Fisher (N. Y.), 30 L. R. A., 305.

Beddingfield v. Estill & Newman.

any one from whom such person so killing, etc., would inherit property of any kind belonging to such deceased person, shall forfeit all right, interest and estate in and to said property, etc., does not apply to an estate held by husband and wife as tenants by entireties, so as to forfeit the estate vested in the husband on the wife's death, although he feloniously caused her death.

Act cited and construed:   1905, ch. 11.

4. **ACTS 1905, CH. 11.**   Construction of.   Affects only new rights acquired by slayer from death of one feloniously killed. Does not forfeit vested estates.

Said act (1905, ch. 11) can only affect new rights or property interests which would be acquired by one guilty of a felonious killing from the person killed, and it cannot operate to forfeit estates vested in the perpetrator, or procurer, of such felonious killing irrespective of the death of the person killed; otherwise, the act would be void as in conflict with the provision of the constitution that "no conviction shall work corruption of blood or forfeiture of estate."

Constitution cited:   Art. 1, sec. 12.

FROM LINCOLN.

Appeal from the Chancery Court of Lincoln county. —WALTER F. BEARDEN, Chancellor.

A. B. WOODWARD & SON, for Beddingfield et al.

ESTILL & NEWMAN, LYNCH & PHILLIPS, S. C. TIGERT, and J. J. LYNCH, for Estill & Newman et al.

MR. JUSTICE SHIELDS delivered the opinion of the court.

Complainants, Effie Baird and Bessie Baird, infants under twenty-one years of age, suing by W. T. Beddingfield, their next friend, bring this bill against C. W. Baird, Estill & Newman, and others to recover certain lands situated in Lincoln county, Tennessee, in the bill described, and to have a deed in trust, which the said, C. W. Baird made to N. F. Hancock as trustee, December 7, 1905, thereon, to secure certain indebtedness due from him to Estill & Newman and others, de-declared void, a cloud upon their title, and removed.

Complainants in their bill charge that previous to December 1, 1905, the defendants C. W. Baird and Mary G. Baird were seized and possessed of the lands sought to be recovered, under conveyances conveying the same to them, to "hold as husband and wife and tenants by entireties;" that upon said day the defendant C. W. Baird murdered his wife, Mary G. Baird, for which crime he was duly indicted upon a charge of murder in the first degree in the circuit court of Lincoln county; that on December 7, 1905, he executed the deed of trust therein attacked upon the lands in question to secure the fees of Estill & Newman and others, whom he had employed to defend him against said charge of murder; that at the February term, 1906, of said court, he was found guilty as charged in the indictment and sentenced to death; that they are the only children and heirs at

law of the said C. W. Baird and Mary G. Baird; and that the latter died intestate.

Complainants further charge that, both under the common law and an act of the general assembly of Tennessee (chapter 11, p. 22, Acts of 1905), the defendant C. W. Baird did not, by virtue of his wife's death, take or become vested with any right or estate in the said lands, and cannot hold the same, as survivor or otherwise, under the said conveyances made to him and his wife, Mary G. Baird, but that by reason of the crime committed by him he lost and forfeited his title to the said lands; that the said lands descended and became the property of complainants; and that the defendants Estill & Newman and others took nothing under the deed of trust made by C. W. Baird for their benefit to N. W. Hancock. These are the allegations of the bill, when stripped of immaterial matters and argument, upon which complainants predicate their right to the relief sought by them.

The defendants made defense by demurrer. The grounds of demurrer, which we will dispose of, are:

"(1)  The bill shows on its face that demurrant C. W. Baird and his wife were seized of the several tracts of land, described in the bill as tenants by the entirety, and that, therefore, nothing passed to the husband by the death of the wife.

"(2)  The bill shows on its face that demurrant C. W. Baird had vested rights in all the property therein described, and so much of section 1, c. 11, p. 22, of the

Beddingfield v. Estill & Newman.

Acts of 1905, as undertakes to forfeit his estate therein, is in conflict with and in violation of section 12, art. 1, of the constitution of the State of Tennessee, which provides that no conviction shall work corruption of blood or forfeiture of estates."

The chancellor, upon a hearing before him, overruled this demurrer and sustained the bill, and allowed an appeal to this court, in the exercise of his discretion, at this stage of the cause.

This action of the chancellor in overruling the demurrer is now assigned as error.

Complainants, in order to sustain their bill and show that they have title to the premises sued for and are entitled to the possession of the same. They cannot recover as heirs at law of C. W. Baird, because he is yet alive and the living have no heirs at law; and, if he were dead, the deed in trust prayed to be removed as a cloud upon their title was executed by him when in life. They must recover then, if at all, as heirs at law of Mary G. Baird, deceased.

The theory of the bill, if we correctly apprehend it, is that under the deeds, which are made exhibits, conveying the lands in question to C. W. Baird and his wife, Mary G. Baird, they were vested of the same by entireties, and that, while ordinarily the survivor of the two—in this case, C. W. Baird—would upon the death of the latter, take the entire estate, under the facts of this case, by reason of the crime committed by him, he was incapable of doing so, and lost and forfeited

all the estate in said lands which he otherwise would have had, and that the same have now become the property of the complainants, as heirs at law of their mother. Complainants, to sustain this contention, rely upon the rule of the common law that one cannot take or inherit property by descent, by distribution, or by virtue of marital rights from one whose death is caused by or results from his felonious act, as announced and applied by this court in the case of *Box* v. *Lanier,* 112 Tenn., 394-413, 79 S. W., 1042, 64 L. R. A., 458, and the provisions of our statute (chapter 11, p. 22, Acts of 1905), providing:

"That any person who shall feloniously kill, conspire with another to kill, or procure to be killed, any one from whom such person so killing, or conspiring to kill, or procuring to be killed, would inherit property of any kind, belonging to such deceased person at the time of death, or who would take said property by deed, will or otherwise, at the death of deceased, shall forfeit all right, interest and estate in and to said property, and that the same shall go to such other person or persons as may be entitled by the laws of descent and distribution, or by will, deeds or other conveyance made by the deceased when in life."

We do not think that either the common law rule or statute, here invoked, apply to this case.

First. Mary G. Baird, the mother of complainants, did not have any title to or estate in the lands sued for which could descend to, be inherited, or otherwise acquired by C. W. Baird, her husband, her heirs at law,

or other persons, upon her natural death. C. W. Baird could not and did not inherit, acquire, or otherwise take any interest or estate in the lands from or through his wife, and would not have done so, had she died a natural death. The title which he claimed was acquired and vested in him by the conveyances made to him and his wife previous to her death, and he did not attempt to convey anything acquired through or under her. Where land is conveyed to husband and wife to hold by entirety, the survivor, upon the death of the other, takes and becomes vested of the entire estate—a fee-simple estate— by virtue of the grant or deed conveying the property to them; the interest of the deceased being terminated by his or her death. This is an ancient, familiar, and well established doctrine of the common law, and enforced in this and all of the other States of the Union, so far as we are informed.

At an early period in this State, in a case where the heirs at law of the wife insisted they were entitled upon her decease to recover one-half of an estate so held by her and her husband under the statutes of descent, their claim was denied, and the husband held entitled to the entire property under the grant to him and his wife. Chief Justice Catron, the eminent jurist, who first held that office in this State, speaking for the court, said:

"The effect of a deed for land to husband and wife has been settled beyond controversy by the common law for centuries. They take but one estate, as a corporation

would take, being by the common law deemed but one person, and if one die, the estate continues in the survivor, the same as if a corporator were to die. Co. Lit., 187b; 2 Bl. Com., 182; 2 Kent Com., 132. And if an estate be conveyed to husband and wife, and to a third person, the husband and wife only take one moiety, and the third person the other moiety. Co. on Lit., 187a. Nothing passes on the death of either the husband or the wife that may first die, but by a condition in the law, the longest liver takes the entire estate. Co. on Lit., 234b. Such has been the recognized rule of the common law in the American courts."

And again: "The estate of a husband and wife is a unit, not made up of any divisible parts subsisting in different natural persons, but an indivisible whole, vested in two persons who are actually distinct, yet who according to legal intendment, are one and the same. On the death of husband or wife, the survivor take no new estate or interest—nothing that was not in him or her before. It is a mere change in the properties of the legal person holding—not of the legal estate holden."

In the case of *Johnson* v. *Lusk,* 46 Tenn., 115, 98 Am. Dec., 445, it is said: "Where real estate is conveyed to husband and wife, they take but one estate, and, if one dies, the estate continues in the survivor. Nothing passes on the death of either the husband or the wife that may first die, but by a condition in law the longest liver takes the entire estate."

In the late case of *Cole Mfg. Co.* v. *Collier,* 95 Tenn.,

Beddingfield v. Estill & Newman.

121, 31 S. W., 1000, 30 L. R. A., 315, 49 Am. St. Rep., 921, Mr. Chief Justice Beard, for the court, said:

"What is this estate? As was said in *Ames* v. *Norman,* supra, the husband and wife, in such an estate, 'do not take in joint tenancy. Constituting one legal person, they cannot be vested with separate and separable interests. They are said, therefore, to take by entireties; that each is seized of the whole estate and neither of a part.'

"The estate thus held is a unit of indivisible parts, differing from a joint tenancy in that the latter is a unit of divisible parts. In the case of the latter relation, when one joint tenant dies, the survivor takes *jus accrescendi;* but in the case of the former estate, upon the death of the husband or wife, no new estate arises. There is a mere change in the properties of a legal person holding the originally granted estate. *Stuckey* v. *Keefe's Executors,* 26 Pa., 397. Or as was said in *Thornton* v. *Thornton,* 3 Rand. (Va.), 179, 'the husband or wife have the whole from the moment of conveyance to them, and the death of either cannot give the survivor more.' "

The adjudication of the highest courts of other States are in accord with those of this court. The supreme court of Pennsylvania, in the case of *Stuckey* v. *Keefe's Executors,* 26 Pa., 399, a case involving an estate of this character, has said:

'In the last case (an estate by entirety), although there are two natural persons, they are but one person

in law, and upon the death of either the survivor takes no new estate. It is a mere change in the properties of the legal person holding, and not an alteration in the estate holden. The loss of an adjunct merely reduces the legal personage holding the estate to an individuality identical with the natural person. The whole estate continues in the survivor, the same as it would continue in a corporation after the death of one of the corporators. This has been the settled law for centuries."

The court of appeals of New York, in the case of *Bertles* v. *Nunan,* 92 N. Y., 156, 44 Am. Rep., 361, announced the rule in these words:

"By the common law, when land was conveyed to husband and wife, they did not take as tenants in common or as joint tenants, but each became seized of an entirety, *per tout et non per my,* and upon the death of either the whole survived to the other. Survivor took the estate, not by right of survivorship simply but by virtue of the grant, which vested the entire estate in each grantee."

Mr. Washburn, in his work on Real Property (volume 1 [5th Ed.], 707), a work of the highest authority, defining the estate of the survivor, says:

"In such cases, the survivor does not take as a new acquisition, but under the original limitation, his estate being simply freed from participation by the other; so that if, for instance, the wife survives, and then dies, her heirs would take to the exclusion of the heirs of her husband."

C. W. Baird, under the conveyance made to him and his wife, acquired a title to the entire estate in the land sued for subject, it is true, to the concurrent estate of his wife and her right of survivorship. It was a vested estate, which upon the death of his wife, although caused by his felonious act, he continued to hold in fee simple under said deeds, and to no extent from or through his wife; and at the time he made the deed in trust to his codefendants he had the power to sell and convey the same in fee. The estate of Mrs. Baird was not one that could be inherited, or descend to her heirs, but one that expired, terminated, and became extinguished by her death before her husband, and therefore she had no interest in the property which complainants could take under the common law or the statute.

This decision does not conflict with that of *Box* v. *Lanier*, supra. There the personal representative of the husband, who suicided after he had murdered his wife, claimed the proceeds of a certain policy of life insurance belonging to the wife at her death, insisting that the estate of his intestate was entitled to it by virtue of the marital rights of the surviving husband, and it was held that the felonious act of the intestate prevented those rights from attaching to the policy, to which doctrine we adhere. The difference in the two cases is that in this the husband was vested with the title to the land previous to the wife's death, while in that the wife was the owner of the policy, and the claim

of the personal representative was based entirely upon the right of the surviving husband to take his deceased wife's choses in action under his common-law marital rights. This distinction was made in the unreported case of *Lucas* v. *Harris*, decided at the same term of the court as *Box* v. *Lanier;* the opinion being likewise announced by Mr. Chief Justice Beard. The parties to the case of *Lucas* v. *Harris,* were the respective heirs at law of the wife who had been murdered, and the husband who had committed suicide, and the contention was that the former were entitled as such heirs to certain lands which the husband and wife had held by entireties, and it was decided in favor of the heirs of the husband.

Second. Nor can complainants recover upon the theory that under the statute C. W. Baird forfeited to them the estate vested in him by the conveyance under which he and his wife held in these lands. It was not the intention of the general assembly that vested rights of this character should be forfeited by the murderous act of the owner therein stated. It was only intended that he should not in any way acquire any new rights or property interest from others as the result of his crime. Any other construction of the statute would render it void. Our constitution (article 1, section 12) prohibits the enactment of any law to the effect that a conviction for crime shall work corruption of blood or forfeiture of estate. The elaborate charges contained in the bill concerning the crime committed by C. W. Baird,

the consideration of the indebtedness secured by the trust deed, which do not reflect upon the rights and equities of the beneficiaries, and the poverty of the complainants, made, doubtless, to appeal to the horror of the court for the crime committed by C. W. Baird, and call in play its sympathies for complainants, cannot affect the rule. The principles which we have herein announced, and upon which this case must be determined adversly to the complainants, are too well established, and there are too many valuable estates in Tennessee depending upon them and held by the tenure herein upheld, to be weakened or even controverted.

The chancellor was in error in overruling the demurrer, and his decree is reversed, the demurrer sustained, and complainants' bill dismissed, with costs.