**UNITED STATES of America, Plaintiff–Appellee, Cross–Appellant,**

v.

**Charles L. SMITH, Defendant–Appellant, Cross–Appellee.**

Nos. 91–5207, 91–5343.

United States Court of Appeals, Sixth Circuit.

Argued March 20, 1992.

Decided June 5, 1992.

Rehearing Denied July 15, 1992.

Michael Winck (argued and briefed), Marilyn L. Hudson (briefed), Asst. U.S. Attys., Jerry G. Cunningham, U.S. Atty., Knoxville, Tenn., for U.S.

Gordon Ball (argued and briefed), Knoxville, Tenn., for Smith.

Before: GUY and NELSON, Circuit Judges, and REAVLEY, Senior Circuit Judge.[*]

REAVLEY, Senior Circuit Judge.

A jury found Charles Smith guilty of manufacturing marijuana on his thirty-five acre farm in White Pine, Tennessee. The district court sentenced Smith to thirty-six months in prison followed by three years of supervised release, and ordered criminal forfeiture of three of the four tracts that, together, constitute Smith's farm. Both Smith and the government appeal, contesting the prosecution of this case under federal law, the validity of the search of Smith's farm, and the propriety of the district court's sentencing and forfeiture order. We affirm Smith's conviction and the forfeiture order, but we vacate Smith's sentence and remand the case for re-sentencing.

## I. BACKGROUND

On August 28, 1989, the Tennessee Bureau of Investigation (TBI) obtained and executed a state search warrant to search Smith's residence, which is located on his farm. Although the TBI agents found no drugs in Smith's residence, a Tennessee

[*] The Honorable Thomas M. Reavley, Senior Circuit Judge of the United States Court of Appeals for the Fifth Circuit, sitting by designation.

Highway Patrol helicopter pilot who was simultaneously surveying Smith's farm reported to the agents that he had located a marijuana patch in Smith's cornfield. The agents then searched the entire farm and discovered fifty-two marijuana plants in the cornfield and seven plants in a seed bed beside a barn. The government later destroyed these plants before Smith had the opportunity to inspect or count them.

After Smith's arrest, the state referred this case to the federal government for prosecution under federal law. A federal grand jury indicted Smith on one count of intentionally manufacturing marijuana in violation of 21 U.S.C. § 841.[1] The indictment also called for the forfeiture of Smith's farm pursuant to 21 U.S.C. § 853. Prior to trial, Smith filed a motion to suppress the government's evidence, arguing that TBI's search of his farm exceeded the scope of the state search warrant and thus violated Tennessee search and seizure law. Smith also filed a motion to dismiss the forfeiture action, arguing that, because the farm consisted of four separate tracts, the government could not seek forfeiture of the *entire* farm as a single unit. Instead, Smith argued, the court must treat each tract separately, and order forfeiture only of those tracts that the government proves that Smith actually used or intended to use to facilitate the manufacture of marijuana. Smith also argued that forfeiture of the farm would constitute cruel and unusual punishment in violation of the Eighth Amendment.

The federal magistrate who heard Smith's motions recommended that both be denied, and Smith appealed. The district court adopted the magistrate's recommendation to deny Smith's motion to suppress, holding that the federal "open fields" doctrine validated the search of the cornfield and the area around the barn. But the court deferred its decision on the forfeiture issues to allow the jury to decide first whether Smith used the farm, as a whole, to manufacture marijuana.

The government's key witness at trial was Smith's former co-worker, Cleveland Gardner. TBI agents discovered forty-eight marijuana plants on Gardner's property on August 18, 1989, ten days prior to their search of Smith's farm. Gardner testified that Smith grew the forty-eight plants in the seed bed near his barn and gave them to Gardner, who transplanted them to his own property.

At the close of the evidence, the court provided the jury with a verdict form that contained two questions: (1) whether Smith is guilty of unlawfully manufacturing marijuana, and (2) whether Smith used or intended to use his farm to commit or facilitate the commission of that offense. The court instructed the jury that the government must prove Smith's guilt beyond a reasonable doubt, but it need only prove Smith's use of the farm to commit the offense by a preponderance of the evidence. The jury answered both questions affirmatively.

At the sentencing hearing, the district court determined that Smith had manufac-

---

1. 21 U.S.C.A. § 841 (West 1981 & Supp.1992) provides:

   (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
   (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute or dispense, a controlled substance;

   .    .    .    .    .

   (b) ... [A]ny person who violates subsection (a) of this section shall be sentenced as follows:

   (1) ... (B) In the case of a violation of subsection (a) of this section involving—

   .    .    .    .    .

   (vii) 100 kilograms or more of a mixture or substance containing a detectable amount of marijuana, or 100 or more marijuana plants regardless of weight; ... such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years ..., a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $2,000,000 if the defendant is an individual ..., or both.

tured over 100 marijuana plants, including those found in the cornfield (52), beside the barn (7), and on Gardner's property (48). The court overruled Smith's objection to the court's inclusion of the plants found at Gardner's residence. The court agreed with Smith, however, that it must consider each of the farm's four tracts separately for forfeiture purposes. The court then excluded Tract 3, on which Smith's residence is located, from the forfeiture order. Finally, the court imposed a thirty-six month prison sentence, followed by three years of supervised release.

## II. DISCUSSION

### A. The Conviction

Smith attacks his conviction by raising two arguments that we need not discuss in depth in light of this court's recent decision in *United States v. Allen*, 954 F.2d 1160 (6th Cir.1992).[2]

■ First, Smith argues that the state's referral of this case for federal prosecution violated his rights to due process and equal protection because there are no guidelines to regulate such referrals. But as this court held in *Allen*, "due process does not mandate that referrals be controlled through policy as long as prosecutors are not acting as rubber stamps and exert their own discretion as to whether or not to prosecute." *Id.* at 1166. Smith, like the defendant in *Allen*, offers no evidence of "rubber-stamping" in this case, and thus he "has failed to demonstrate that his due process or equal protection rights have been violated." *Id.*

■ Second, Smith argues that the district court erred in denying his motion to suppress because TBI's search of Smith's

property violated Tennessee search and seizure law, which Smith argues does not recognize the federal "open fields" doctrine. But as the *Allen* court explained when it rejected this argument, "[t]he state may reserve certain rights including a stricter standard of search and seizure law; however, such a standard does not have to be applied in federal court." *Id.* at 1168 (citing *United States v. Loggins*, 777 F.2d 336, 338 (6th Cir.1985)). Federal search and seizure law applies in this federal prosecution, and Smith does not allege that TBI's search was illegal under federal law.

We affirm Smith's conviction.

### B. The Prison Sentence

■ Smith attacks his prison sentence with two arguments that this court addressed in *Allen*. First, Smith argues that the government's destruction of the marijuana plants before Smith had the opportunity to count them resulted in a violation of his due process rights. In the absence of bad faith, however, the government's destruction of the plants does not constitute a violation of due process. *Allen*, 954 F.2d at 1168–69. Because Smith neither alleges nor offers evidence of bad faith on the government's part, we find no due process violation in this case.[3]

■ Second, Smith contends that 21 U.S.C. § 841(b)(1)(B) and U.S.S.G. § 2D1.1(c) (Drug Quantity Table), which provide a minimum five-year sentence for the manufacture of 100 or more marijuana plants regardless of their weight, violate due process and equal protection rights. Like Allen, Smith first raised this argument in a motion for correction of sentence pursuant to Federal Rule of Criminal Procedure 35, and the district court denied the

---

**2.** Although *Allen* is separate from the present case, both cases involve similar facts and many of the same parties and issues. The *Allen* defendants were co-workers of Smith and Gardner, and Gardner was a co-defendant-turned-government-witness in both cases. Smith's attorney represented one of the co-defendants in *Allen*, and he raised several identical arguments in both cases.

**3.** Smith also contends that the court erred by finding that Smith manufactured the 48 plants

discovered on Gardner's property because there was no evidence that those plants were the same ones that Gardner took from Smith's home. But the prosecutor asked Gardner whether "the marijuana plants you got [from Smith are] the same ones that were taken from behind your house later?," and Gardner responded "Yes, sir." Gardner's testimony sufficiently supports the court's finding that Smith manufactured the 48 plants discovered on Gardner's property.

motion because Smith had already filed an appeal from the court's judgment. We agree with the government that Smith's case, like Allen's, is not an "exceptional case" that justifies our consideration of this issue that the district court did not consider. *Allen*, 954 F.2d at 1168.

■ The government also attacks Smith's prison sentence, arguing that the district court erred in imposing a sentence less than the statutory minimum of five years. We agree. Congress requires that, in the case of a violation involving 100 or more marijuana plants, the defendant "shall be sentenced to a term of imprisonment which may not be less than 5 years." 21 U.S.C.A. § 841(b)(1)(B) (West Supp. 1992). After receiving evidence that Smith has a heart condition that leaves him with a fifty percent chance of surviving for two years, the district court imposed a sentence of only thirty-six months. The Sentencing Guidelines provide that where, as here, "the statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence." U.S.S.G. § 5G1.1(b) (Nov.1991). Despite Smith's compelling circumstances, the district court had no discretion to impose a sentence below the statutory minimum. *United States v. Hodges*, 935 F.2d 766, 772 (6th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 251, 116 L.Ed.2d 206 (1991). Because the court im-

posed a sentence less than the statutorily required minimum, we vacate the court's sentence.[4]

### C. The Forfeiture Order

Both parties appeal from the district court's order requiring criminal forfeiture of three of the four tracts that constitute Smith's farm. Smith contends that the district court erred by holding that the government need only prove its forfeiture case by a preponderance of the evidence. The government argues that the court erred by holding that each of the four tracts that constitute the farm must be treated as separate units of "property" for forfeiture purposes. Both parties contest the court's determinations as to which of the four tracts are forfeitable.

#### 1. The Standard of Proof under 21 U.S.C. § 853

To obtain criminal forfeiture under section 853, the government must show that the property in question fits one of the three categories of property described in section 853(a).[5] Subsection (a) does not specify the standard of proof under which the government must make this showing. Subsection (d), however, creates a rebuttable presumption that the convicted person's property "is subject to forfeiture under this section if the United States establishes *by a preponderance of the evidence*

---

4. Smith contends that, because the government did not object to the thirty-six month sentence at the time that the district court imposed it, we cannot reverse or vacate the sentence on this ground. But the government did instruct the court prior to the sentencing hearing that the statute required a sentence of at least five years. The court noted in its judgment that the statute imposes a five-year minimum, but it chose to "depart downward" because of Smith's medical condition. We can vacate the sentence on this ground because the court considered and passed on this issue.

5. 21 U.S.C.A. § 853(a) (West Supp.1992) provides:

Any person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law—
(1) any property constituting, or derived from, any proceeds the person obtained, di-

rectly or indirectly, as the result of such violation;
(2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation; and
(3) in the case of a person convicted of engaging in a continuing criminal enterprise in violation of section 848 of this title, the person shall forfeit, in addition to any property described in paragraph (1) or (2), any of his interest in, claims against, and property or contractual rights affording a source of control over, the continuing criminal enterprise. The court, in imposing sentence on such person, shall order, in addition to any other sentence imposed pursuant to this subchapter or subchapter II of this chapter, that the person forfeit to the United States all property described in this subsection.

that" the person acquired the property during, or within a reasonable time after, the period of the violation, and that the violation was the only likely source for the property. 21 U.S.C.A. § 853(d) (West Supp.1992) (emphasis added). The statute does not clarify whether Congress intended to apply the preponderance standard to the government's overall burden of proving which property defendants must forfeit under subsection (a). We recognize three plausible interpretations of what Congress intended when it drafted section 853.

First, Congress may have intended that the government be able to create the presumption under subsection (d) using the preponderance standard, but that the government must ultimately prove that the property is subject to forfeiture under subsection (a) beyond a reasonable doubt. The Third Circuit rejected this construction "as inconsistent with Congressional intent" in *United States v. Sandini*, 816 F.2d 869, 875 (3rd Cir.1987). The Seventh and Ninth Circuits follow *Sandini*. *See United States v. Hernandez–Escarsega*, 886 F.2d 1560, 1577 (9th Cir.1989) ("It would make little sense ... to provide for a rebuttable presumption that certain property is subject to forfeiture if facts relative to that property are established by a preponderance of the evidence, then move to a beyond-the-reasonable-doubt standard before the property could be forfeited."), *cert. denied*, —— U.S. ——, 110 S.Ct. 3237, 111 L.Ed.2d 748 (1990); *United States v. Herrero*, 893 F.2d 1512, 1541–42 (7th Cir.) (stating approval of *Sandini*), *cert. denied*, 496 U.S. 927, 110 S.Ct. 2623, 110 L.Ed.2d 644 (1990); *United States v. Simone*, 931 F.2d 1186, 1197–99 (7th Cir.) (district court erred by instructing jury that government can create a rebuttable presumption with a preponderance of the evidence but must ultimately prove the property to be forfeitable beyond a reasonable doubt), *cert. denied*, —— U.S. ——, 112 S.Ct. 584, 116 L.Ed.2d 609 (1991). A panel of the Eleventh Circuit rejected the *Sandi-*

*ni* view in *United States v. Elgersma*, 929 F.2d 1538, 1548 (11th Cir.1991),[6] but that circuit has since vacated the panel opinion and granted rehearing en banc. *United States v. Elgersma*, 938 F.2d 179, 180 (11th Cir.1991).

A second interpretation of section 853 is that, although the government must prove that the property is subject to forfeiture under subsection (a) beyond a reasonable doubt, subsection (d) provides an exception to this higher standard and allows the government to prove that the property constitutes "proceeds" of the offense by creating the presumption with a preponderance of the evidence. Property subject to forfeiture under subsection (a) includes *proceeds* from the offense (section 853(a)(1)), property used to *commit or facilitate* the commission of the offense (section 853(a)(2)), and property that gives the person a *source of control* over a continuing criminal enterprise (section 853(a)(3)). The presumption that subsection (d) provides, however, applies only to *proceeds* of the offense. Language in section 853's legislative history reveals that Congress intended to ease the burden on the government's attempt to prove that property constitutes *proceeds* of the offense. *See* S.Rep. No. 225, 98th Cong., 2d Sess. 212 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3395 (subsection (d) establishes a permissive inference under "certain circumstances which are indicative of the fact that particular property" represents proceeds of drug transactions because "it is often difficult to produce direct evidence that particular property of a defendant constitutes, or was purchased with, such proceeds"). No federal court of appeals, however, has construed section 853 to differentiate between proceeds of the offense and other property on the burden of proof necessary for forfeiture.

The third possible interpretation of section 853 infers from Congress' reference to the preponderance standard in subsection

---

**6.** One judge on the *Elgersma* panel disagreed, however, and stated: "If the government can establish forfeiture by a preponderance of the evidence by using the § 853(d) presumption, the more reasonable supposition is that Congress intended to impose the same preponderance standard under § 853(a)." 929 F.2d at 1552 (Anderson, J., concurring).

(d) that Congress intended that standard to apply under subsection (a) as well. The Third, Seventh, and Ninth Circuits concluded that this interpretation best represents Congress' intent. *Sandini,* 816 F.2d at 876; *Simone,* 931 F.2d at 1199; *Hernandez–Escarsega,* 886 F.2d at 1577.

Like the statutory language itself, courts have interpreted the legislative history of section 853 differently on this point. Some language in the Senate report implies that Congress intended the beyond-a-reasonable-doubt standard to apply under subsection (a). *See* S.Rep. No. 225 at 196 & 210, *reprinted in* 1984 U.S.C.C.A.N. at 3379 & 3393 (one advantage of civil forfeiture under 21 U.S.C. § 881 over criminal forfeiture under section 853 is that "the government's burden of proof is lower" in civil cases). The Third Circuit, however, concluded that other language in the Senate report implies that Congress intended that the lower burden apply. *See Sandini,* 816 F.2d at 876 (concluding from the report's discussion of subsection (d) that "[t]he legislative history makes clear that Congress sought to make the government's burden of proof in criminal forfeitures the same as that in the civil realm"). The *Elgersma* panel, which found that the higher burden applies, concluded that "the legislative history itself is inconclusive." 929 F.2d at 1546.

Finding no clear guidance from Congress, the federal circuits that have considered this issue have focused on the nature of a criminal forfeiture proceeding. The Third Circuit in *Sandini* relied on the mandate of subsection (a) that the court order forfeiture "in addition to any *other sentence,*" and concluded that "[f]orfeiture is not an element of the ... offense, but simply an additional penalty for that pro-

scribed conduct." 816 F.2d at 875. The court reasoned that, because the elements of a criminal offense must be proved beyond a reasonable doubt, while the preponderance standard applies to statutorily enhanced punishments, Congress intended that the lower standard apply to the punishment of criminal forfeiture. The *Elgersma* panel, however, concluded that "beyond a reasonable doubt is the proper standard [because] criminal forfeiture is not punishment, but a criminal charge to be proved like any other." 929 F.2d at 1548. Those judges determined that criminal forfeiture is a "substantive criminal charge" because some criminal procedures apply to criminal forfeiture proceedings. *Id.*[7]

We decide to follow existing federal circuit precedent on this close issue, and hold that the government must prove that property is subject to criminal forfeiture under section 853(a) by a preponderance of the evidence. We agree with *Sandini* that this holding best represents the nature of a criminal forfeiture proceeding as Congress intended it. However ambiguous section 853 may be, it expressly provides that a court shall order criminal forfeiture "in addition to any *other sentence*" at the time that it imposes the sentence. Although a criminal forfeiture proceeding bears some characteristics of a criminal matter, its purpose is to determine the proper punishment for the charged offense once the defendant's guilt on that charge has been proved beyond a reasonable doubt. By requiring proof by a preponderance of the evidence, we acknowledge the purpose of criminal forfeiture and ensure that it serves as the efficient alternative to civil forfeiture that Congress intended it to be. *See* S.Rep. No.

---

**7.** In a case that pre-dates section 853, the Eleventh Circuit held that the defendant in a criminal forfeiture proceeding under the Continuing Criminal Enterprise statute, 21 U.S.C. § 848, "is entitled to a jury trial on the issue whether a particular asset is forfeitable" because such a proceeding "is plainly a criminal, as opposed to civil, matter." *United States v. Garrett,* 727 F.2d 1003, 1012 (11th Cir.1984), *aff'd,* 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985). The *Garrett* court rejected the government's argument that criminal forfeiture under section 848 was " 'essentially a matter of punishment' indis-

tinguishable from ordinary sentencing." *Id.* at 1012 n. 6.

The *Elgersma* panel concluded that the right to a jury, combined with the requirement in Fed.R.Crim.P. 31(e) that the jury decide criminal forfeiture by a special verdict, and the requirement in Fed.R.Crim.P. 7 that a criminal indictment give the defendant notice that the government will seek criminal forfeiture, warrant the treatment of criminal forfeiture as a substantive criminal charge, rather than as additional punishment. 929 F.2d at 1548.

225 at 196–97, *reprinted in* 1984 U.S.C.C.A.N. at 3379–80. We thus find no error in the district court's instruction on the government's standard of proof.

### 2. Should the farm be treated as four separate units?

Section 853(a)(2) requires forfeiture of *all* of the "property" that a defendant uses or intends to use to commit or facilitate the commission of an offense, even if the defendant uses only *part* of that "property" for that purpose. *See United States v. Littlefield,* 821 F.2d 1365, 1367 (9th Cir. 1987) (because section 853(a)(2) requires forfeiture of property used "in any manner or part," all is subject to forfeiture even when only part is used); *United States v. Harris,* 903 F.2d 770, 777 (10th Cir.1990) (following *Littlefield* ).[8]

We must then determine what constitutes Smith's "property" under section 853. The government contends that Smith's *farm* is his "property" and thus, if Smith used any of it to facilitate the offense, he must forfeit all of it. Smith argues that we must treat each of the four *tracts* that constitute the farm as a separate piece of "property" under section 853. Neither party cites, nor have we found, an opinion of any federal circuit that addresses this particular question of the identification of tracts of real property subject to forfeiture under section 853. The Fourth Circuit, however, has addressed this issue in the context of civil forfeiture under section 881, and concluded that the property must be defined by the recorded instruments and documents that created the defendant's interest in the property. *See United States v. Santoro,* 866 F.2d 1538, 1543 (4th Cir. 1989); *United States v. Reynolds,* 856 F.2d 675, 677 (4th Cir.1988).

In *Reynolds,* the appellant contested the district court's order that required her to forfeit a thirty acre parcel that she possessed under a lease with an option to purchase, arguing that she had used only a small portion of the parcel to commit drug offenses. The Fourth Circuit noted that section 881 requires forfeiture of "the whole of any lot or tract of land ... which is used ... in any manner or part," and held that such a "tract" must be defined by "the natural source for its definition: the instrument creating an interest in the property." *Id.* at 676–77. Because the lease defined the thirty acre parcel as a single tract, the court affirmed forfeiture of the entire parcel. *Id.* *Santoro* involved the forfeiture of a twenty-six acre tract of land that was bisected by a road. The defendant-landowner treated the portions on each side of the road as two separate tracts, and the property had even been taxed as two separate parcels. 866 F.2d at 1540. But the deed by which the owner obtained her interest in the property described it as a single, undivided tract. *Id.* Relying on *Reynolds,* the Fourth Circuit rejected the owner's argument that the tract constituted two separate pieces of "property" for forfeiture purposes and held that the forfeited property "must be determined from the duly recorded instruments and documents filed in the county offices where the defendant property is located." *Id.* at 1543. "The [owner's] subjective characterization of the property as two tracts," the court held, "cannot serve as the legal basis" for determining "property" under section 881. *Id.*

Because of the similarities in the language and purpose of the two statutes on this point, we believe that the Fourth Circuit's property-identification rule is correct for criminal forfeiture under section 853 as well as civil forfeiture under section 881. *See Littlefield,* 821 F.2d at 1367–68

---

**8.** By adopting this interpretation of section 853, we follow the Ninth and Tenth Circuits' interpretation of the criminal forfeiture statute, as well as the interpretation that other circuits have made of identical language in the civil forfeiture statute, 21 U.S.C. § 881(a)(7). *See United States v. Real Property & Residence at 3097 S.W. 111th Ave.,* 921 F.2d 1551, 1557 (11th Cir.1991); *United States v. 141st Street Corp.,* 911 F.2d 870, 880 (2d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1017, 112 L.Ed.2d 1099 (1991); *United States v. One 107.9 Acre Parcel of Land,* 898 F.2d 396, 400 (3rd Cir.1990). We agree with these courts that, by requiring forfeiture of property that the defendant used "in any manner or part," the statutes' plain language requires this result.

(the government can "accomplish in a criminal forfeiture proceeding under section 853 precisely what it could do through a separate civil forfeiture proceeding under section 881"). Thus, we hold that tracts of real property subject to forfeiture under section 853 are defined by the instruments and documents that created the defendant's interest in the property.[9]

██ Our application of this rule to the present facts, however, is complicated. Smith initially obtained his interest in the farm by virtue of four separate conveyances of four separate tracts to Smith and his former wife, Linda, on four separate dates between 1978 and 1984. The four tracts are taxed separately and have been the subject of separate deeds of trust. Smith and Linda divorced in 1985, at which time Linda conveyed all of her interest in all four tracts to Smith by a single quitclaim deed, which Smith recorded. The government contends that, because the quitclaim deed conveyed all four tracts as one single unit, the entire farm constitutes the "property" that is subject to forfeiture. The government finds support for this result in the fact that Smith treated the farm as one single unit, and in the forfeiture statute's instruction that its provisions "shall be liberally construed to effectuate its remedial purposes." 21 U.S.C.A. § 853(o) (West Supp.1992). Smith counters that we should treat each of the four tracts separately because the quitclaim deed did not actually create his interest in the farm. Smith reasons that he and Linda, who were married when they obtained their interest in the four tracts, held the tracts as tenants by the entirety, and thus they owned the tracts as if they were one person, each of them taking the whole. Thus, Smith argues, Linda did not actually convey any interest *to him* under the quitclaim deed,

but instead simply forfeited her own interest to allow Smith to hold the tracts in fee simple alone.

██ We resolve this issue by applying Tennessee's law governing tenancies by the entirety.[10] Under that law, a deed that creates a tenancy by the entirety gives each spouse an interest in the whole indivisible estate. Thus, the husband and wife each become "the owner of *the whole from the moment of the conveyance to them.*" *Robinson v. Trousdale County,* 516 S.W.2d 626, 628 (Tenn.1974) (quoting *Cole Mfg. Co. v. Collier,* 95 Tenn. 115, 31 S.W. 1000, 1001 (1895)) (emphasis added). Together, "[t]hey take but one estate, as a corporation would take, being by the common law deemed but one person, and, if one die, the estate continues in the survivor, the same as if a corporator were to die." *Beddingfield v. Estill & Newman,* 118 Tenn. 39, 100 S.W. 108, 110 (Tenn. 1907). When one spouse dies, "the survivor ... takes and becomes vested of the entire estate—a fee simple estate—*by virtue of the grant or deed conveying the property* to them." *Id.* (emphasis added). "On the death of husband or wife, the survivor take no new estate or interest—nothing that was not in him or her before. It is a mere change in the properties of the legal person holding—not of the legal estate holden." *Id.* We thus conclude that Smith initially obtained his interest in the whole of each of the four tracts by virtue of the four separate deeds.

██ Because the government relies on the quitclaim deed that Linda delivered to Smith, we must determine the effect that deed had on Smith's interest in the property. Tennessee's Supreme Court addressed this question in another context and concluded that, "when [one spouse] transfer-

---

**9.** In adopting this rule, we acknowledge that there may be exceptions to it. For example, the government may show that a defendant acquired a piece of property through numerous deeds with the specific intent of limiting the reach of a forfeiture order under section 853.

**10.** As this court recently determined, because "[f]orfeiture proceedings implicate property rights which have traditionally been measured

in terms of state law," and because section 853 contains no rule for determining the scope of property rights, "it is appropriate to refer to state law in determining the nature of the property interest" involved in a forfeiture proceeding. *United States v. Certain Real Property Located at 2525 Leroy Lane,* 910 F.2d 343, 349 (6th Cir.1990), *cert. denied,* — U.S. —; 111 S.Ct. 1414, 113 L.Ed.2d 467 (1991).

red his interest [in a tenancy by the entirety] to his wife . . ., she became the owner in fee simple absolute, *just as she would have done had he predeceased her.*" *Barry v. Woods*, 594 S.W.2d 687, 689 (Tenn.1980) (emphasis added). Linda's transfer of her interest in the four tracts, therefore, did not actually *create* Smith's interest in the land any more than Linda's death would have. Smith obtained his interest in the farm by the four separate deeds that created four separate tenancies by the entirety.[11] Because the four separate deeds actually created Smith's interest in the land that now constitutes his farm, we find no error in the district court's decision to treat each tract separately for forfeiture purposes.

### 3. Which tracts should be forfeited?

Smith does not contest the forfeiture of Tract 1, on which the officers discovered the marijuana patch in the cornfield. But Smith argues that the evidence is insufficient to support the finding that he used Tracts 2 or 4 to commit or facilitate commission of the offense. The government contends that the court erred in exempting Tract 3 from the forfeiture order.

■ The district court ordered forfeiture of Tract 2 because it found that the seed bed was located on that tract, and Smith contends that there is insufficient evidence to support this finding. We disagree. Gardner testified that, "[i]f you are standing looking straight at the barn, [the seed bed] was right on the left of it near the edge of the woods." The government's exhibits show that the barn, which is located on Tract 2, borders and faces Tract 1. As one looks "straight at the barn," the area to the left which Gardner designated as the area containing the seed bed is located on Tract 2. The evidence thus supports the district court's finding that Smith used Tract 2 to manufacture marijuana.

■ Smith contends that the forfeiture of Tract 4 was in error because he grew no marijuana on that tract. The government argues that, because the cornfield in which the officers located the large marijuana patch extended across Tract 1 and Tract 4, Tract 4 "facilitated" the commission of the offense by concealing the patch on Tract 1. To "facilitate" the commission of the offense under section 853, the property in question must bear a "sufficient nexus" or "substantial connection" to the underlying criminal activity. *See United States v. $22,287, United States Currency*, 709 F.2d 442, 447 (6th Cir.1983) (requiring "nexus" under section 881); *Harris*, 903 F.2d at 777–78 (requiring "nexus" under section 853); *United States v. Parcel of Land & Residence at 28 Emery St.*, 914 F.2d 1, 3–4 (1st Cir.1990) (requiring "substantial connection" under section 881). We hold that, when the defendant uses real property to *actually physically conceal* the commission of the offense on adjacent property, the nexus is sufficient to support a finding that the property "facilitated" commission of the offense under section 853(a)(2). The district court found that Tract 4 helped to actually physically conceal the marijuana patch on Tract 1, and the evidence supports this finding. We thus find no error in the district court's determination that Tract 4 facilitated commission of the offense.

■ Finally, the government contends that the district court erred in finding that Smith did not use Tract 3, on which his residence was located, to facilitate commission of the offense. Although the agents found no marijuana in the residence or on Tract 3, the government argues that Smith used the residence to guard the marijuana and to conceal the entire operation by making the farm appear to be a legitimate use of the land. The record contains no evidence that Smith used the house to "guard" the marijuana, so we need not decide whether this use would create a

---

11. We note that Linda's quitclaim deed specifically described and conveyed each of the four tracts separately. Moreover, we reject the government's contention that we must treat Smith's farm as a single unit because Smith treated it that way. Smith's subjective treatment of the tracts as a single farm is no more controlling than was Santoro's subjective characterization of her property as two tracts. *See Santoro*, 866 F.2d at 1543.

sufficient nexus to warrant forfeiture. And we find no error in the district court's conclusion that the mere presence of the residence on Tract 3 did not provide the type of concealment sufficient to "facilitate" the offense. We do not hold that an offense can never be facilitated by a defendant's use of property in a manner that creates the appearance that adjacent property is used for legitimate purposes, but neither will we require this result as a matter of law.

### 4. Cruel and Unusual Punishment?

 Smith contends that the forfeiture of Tracts 1, 2, and 4, combined with his prison sentence, constitute cruel and unusual punishment because the value of the land, which the evidence suggests may be near $1,000,000, is disproportionate to the relatively small number of marijuana plants involved. Even if we assume, however, that a forfeiture order under section 853 is subject to the Eighth Amendment's prohibition, this order is neither "cruel and unusual" nor grossly disproportionate to the crime. *See Harmelin v. Michigan,* — U.S. ——, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991); *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). Congress, in fact, has provided for a fine of up to $2,000,000, in addition to a forty-year prison sentence, for the manufacture of 100 or more marijuana plants. *See* 21 U.S.C.A. § 841(b)(1)(B) (West Supp.1992). We thus reject Smith's Eighth Amendment argument.

### III.  CONCLUSIÓN

We AFFIRM Smith's conviction and the forfeiture order, VACATE his sentence, and REMAND the case for re-sentencing in accordance with this opinion.

RALPH B. GUY, Jr., Circuit Judge, concurring in part and dissenting in part.

I concur in all of Judge Reavley's well-reasoned opinion, except that portion dealing with the forfeiture of the farmhouse. Forfeiture is intended to be a harsh sanction. It is intended not only to take the profit out of drug dealing but also to make persons give serious consideration prospectively as to whether the potential gain is worth the downside risk. I would not try to formulate any type of *per se* rule relative to forfeitures, but simply analyze each situation on a case-by-case basis. Here, the defendant had a relatively small farm, with a farmhouse located on the property. I would treat the property as one entity, notwithstanding how it was acquired historically, and declare it all forfeitable. For all practical purposes, the property was treated as a unit, and the house certainly was the "command post" for whatever was occurring on the property, be it growing marijuana or legitimate activities. There well may be a point at which a defendant's constitutional rights will mandate that the proportionality of the forfeiture to the offense be considered. This case is far short of such a point, however.