**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Eugene J.R. MYERS, Defendant–
Appellant.**

No. 93–2523.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 8, 1993.

Decided April 13, 1994.

Rehearing and Suggestion for Rehearing
En Banc Denied June 27, 1994.*

---

* Arnold, Chief Judge and Loken, Circuit Judge, would grant the suggestion.

Nina J. Ginsberg, Alexandria, VA, argued, for appellant.

Martin J. McLaughlin, Asst. U.S. Atty., Cedar Rapids, IA, argued (Richard L. Murphy, Asst. U.S. Atty., on the brief) for appellee.

Before HANSEN, Circuit Judge, JOHN R. GIBSON,[**] Senior Circuit Judge, and JACKSON,[***] District Judge.

HANSEN, Circuit Judge.

A jury convicted Eugene J.R. Myers of various charges of manufacturing and conspiracy to manufacture a controlled substance, money laundering, and conspiracy to commit interstate and foreign travel in aid of racketeering and money laundering offenses. The jury also found certain real and personal property to be forfeitable because it had been used to facilitate the drug offenses pursuant to 21 U.S.C. § 853(a)(2) or had been involved with the money laundering scheme pursuant to 18 U.S.C. § 982(a)(1). Myers appeals the district court's [1] order of criminal forfeiture but not the underlying criminal convictions. Myers argues that the district court erred in three respects: (1) by instructing the jury to determine forfeitability of Myers' property by a preponderance of the evidence; (2) by instructing the jury that the farm was a single indivisible tract for purposes of forfeiture; and (3) by ordering forfeiture of his entire farm in violation of the Eighth Amendment's Excessive Fines Clause. We affirm.

## I. BACKGROUND

Before this case arose, Myers lived on a farm located in Allamakee County, Iowa. He initially acquired his farm as two separate contiguous parcels in two separate purchases from different persons. In 1982, Myers mortgaged his entire farm to Joe Rhomberg as security for debts that Myers owed to Rhomberg. In January 1989, Rhomberg foreclosed on the mortgage and Myers executed a quit claim deed conveying the entire property and all "right, title, interest, estate, claim and demand" to the real property to Rhomberg. (Appellant's App. at 32.) Thereafter, Myers filed for bankruptcy. In April 1989, Myers negotiated a real estate contract with Rhomberg by which Myers reacquired the entire property at one time in one instrument.

Also in 1989, Myers met and befriended Dan Meyer while the two were incarcerated in Wisconsin. After Myers' release from prison, he arranged for Dan Meyer to be paroled to work on Myers' farm. Meyer moved to Myers' farm in December 1989, and they planned to go into "business" together. Connie Last, Myers' girlfriend, also lived at the farm. She eventually learned that Myers and Dan Meyer were involved in the "business" of growing marijuana plants. Through a series of trips to Costa Rica, Meyer and Myers arranged to have a large sum of money that Dan Meyer had deposited in a Costa Rican bank wired to Myers' farm account in Iowa through a series of 13 wire transfers. In each transfer, $9,000 was deposited into Myers' farm account in an effort to avoid the detection of the Internal Revenue Service. This money funded Myers and Dan Meyer's new business, M & M Enterprises, which included the marijuana growing operation.

With the money, Myers began to convert his farm into a concealed marijuana growing operation, and he wrote checks on his farm account to purchase whatever was necessary for the operation and its concealment. Myers modified a large barn to grow the marijuana. He concealed its true purpose by building a false wall just inside the large doors at one end of the barn, and then he stacked bales of hay in the partially opened doorway to give the appearance that the barn was filled with hay. He built a row of dairy

[**] The HONORABLE JOHN R. GIBSON was an active judge of this court at the time this case was submitted and took senior status on January 1, 1994, before the opinion was filed.

[***] The HONORABLE CAROL E. JACKSON, United States District Judge for the Eastern District of Missouri, sitting by designation.

1. The Honorable Michael J. Melloy, Chief Judge of the United States District Court for the Northern District of Iowa.

cattle or calf stalls along one side and created a secret entrance through one of the stalls into the interior of the barn, where he had installed a sophisticated grow lighting and ventilation system. Myers bought a back hoe and used it to dig a trench from the barn to a nearby duck pond. He laid pipe in the trench so as to carry the exhaust air away from the barn to the pond. Myers used trucks from his trucking business to transport many of the supplies and other items necessary to the growing operation. Myers started growing the marijuana plants in the residence and transferred them to a railroad boxcar next to the barn after they germinated. Myers buried a steel railroad tank car underground to serve as a tunnel between the barn and the sealed railroad boxcar. When the plants grew larger, Myers transferred the plants from the sealed railroad boxcar "nursery" to the barn.

In 1991, Dan Meyer was arrested on a return trip from Costa Rica. He then began to cooperate with state and federal law enforcement officials and returned to Myers' farm to help discover and disclose the marijuana growing operation. On March 25, 1992, law enforcement officials obtained and then executed a search warrant for Myers' farm. They made a videotape of the search, showing the setup of the farm and the seizure of approximately 393 marijuana plants and a large amount of marijuana-growing equipment from the barn and railroad car. Officials also seized documents and other related items found in Myers' residence.

Subsequently, law enforcement officers arrested Myers and charged him in an 18–count superseding indictment that included counts of manufacturing marijuana, conspiracy to manufacture marijuana, money laundering, conspiracy to commit interstate and foreign travel or transportation in aid of racketeering, and forfeiture pursuant to both 21 U.S.C. § 853(a)(2) and 18 U.S.C. § 982(a)(1). Prior to trial, Myers filed various motions, including several pertaining to the forfeiture counts seeking dismissal in part on the ground that the forfeitures alleged in the indictment were constitutionally disproportionate in violation of the Eighth Amendment. In a pretrial hearing, the district court noted, and the parties agreed, that the motions to dismiss the forfeiture counts were premature and would not be at issue unless a jury convicted Myers on the criminal charges. Therefore, the district court postponed the hearing on those motions until after trial.

The jury convicted Myers on the 16 substantive criminal counts of the second superseding indictment, and the parties then presented evidence and arguments on the two bifurcated forfeiture counts. Count 3 sought forfeiture of real and personal property based upon 21 U.S.C. § 853(a)(2), alleging that Myers used the property to commit and to facilitate the drug crimes, and count 18 sought forfeiture of real and personal property based upon 18 U.S.C. § 982(a)(1), alleging that the property was involved in Myers' money laundering offense. Myers requested a reasonable doubt instruction on the forfeiture counts and further requested that the district court divide his farm into separate parcels for the jury to consider. The district court denied these requests. The district court instructed the jury that the government had to prove that Myers' farm was forfeitable by a preponderance of the evidence, and the instructions described Myers' farm as a single piece of property to be forfeited, if at all, as a whole. (See Appellant's App. at 5–20.)

While deliberating on the forfeiture counts, the jury submitted questions to the court, asking if they could modify the property description by dividing the property between farmland, homestead, and buildings. (Trial Tr. at 679.) The district court refused to allow the jury to alter the property description, and the jury rendered a unanimous verdict forfeiting the entire parcel of real estate under each forfeiture count. (See Appellant's App. at 24–27.)

The district court sentenced Myers on his criminal convictions on May 27, 1993, and the district court filed the order of forfeiture on June 22, 1993. Myers appeals, challenging the order of forfeiture. Myers does not appeal his underlying criminal convictions.

## II. DISCUSSION

■ Myers' first contention on appeal is that the district court erred by requiring the government to prove that his farm was forfeitable by a preponderance of the evidence under 21 U.S.C. § 853(a)(2)[2] and 18 U.S.C. § 982(a)(2).[3] Myers contends that the government should be required to prove criminal forfeiture of real property beyond a reasonable doubt. Today in *United States v. Bieri*, 21 F.3d 811, 814–15 (8th Cir.1994), which was argued with Myers' case, we held that the district court did not err in determining criminal forfeiture under section 853(a)(2) by a preponderance of the evidence. Based on this conclusion, Myers' argument based upon 21 U.S.C. § 853(a)(2) fails. The language of the money laundering forfeiture statute is very similar to the language of section 853(a). By stating that "[t]he court, in imposing sentence on a person convicted" of a money laundering offense, shall forfeit property involved in the offense, Congress indicates that forfeiture under the money laundering provision is also a sentencing sanction, not an offense or element of an offense. Therefore, the preponderance standard of proof applies to forfeiture under 18 U.S.C. § 982(a)(1) as well as under section 853(a)(2). Thus, we conclude that the district court did not err in instructing the jury to apply a preponderance of the evidence standard to determine whether Myers' farm was forfeitable under 21 U.S.C. § 853(a)(2) and 18 U.S.C. § 982(a)(1).

■ Myers' second contention is that the district court erred by instructing the jury

that Myers' farm was a single indivisible parcel of property for the purpose of determining forfeiture. Myers originally acquired his property as two separate farms and in two separate instruments, executed ten years apart. Therefore, Myers contends that the court should have treated the farm as two separate pieces of property for the forfeitability determination. Although Myers subsequently lost his farm through foreclosure and repurchased it as a unit by the terms of one instrument, Myers argues that because the legal description used in the contract describes the property as two separate parcels, it retains its two-tract character. He further asserts that because the criminal activity took place only on one of the described parcels, the other was not forfeitable. We disagree.

We addressed a similar issue in *Bieri*, 21 F.3d at 816–17, where we adopted the Sixth Circuit's rule that "tracts of real property subject to forfeiture under section 853 are defined by the instruments and documents that created the defendant's interest in the property." *United States v. Smith*, 966 F.2d 1045, 1054 (6th Cir.1992). We determined in *Bieri* that the critical facts leading to the conclusion that the defendant's interest in the property is indivisible are that the defendant acquired all of the property at the same time in one instrument and that the property as conveyed is a contiguous unit. 21 F.3d at 817.

Myers would have us view his case as similar to the situation in *Smith*, where the court found that the defendant had separable

**2.** Section 853(a) states in part as follows:

Any person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law—
(1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;
(2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violations; . . .

The court, in imposing sentence on such person, shall order, in addition to any other

sentence imposed pursuant to this subchapter or subchapter II of this chapter, that the person forfeit to the United States all property described in this subsection.

**3.** Section 982(a)(1) states in relevant part as follows:

The court, in imposing sentence on a person convicted of an offense in violation of [the money laundering statutes of Title 31 or] of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.

interests in the individual tracts which comprised the whole of the farm. 966 F.2d at 1055. Smith's ex-wife transferred her interest in their four-tract farm to Smith upon their divorce. *Id.* at 1054. The court held that under Tennessee law, Smith's divorce did not create Smith's interest in the property because he and his ex-wife had shared a tenancy by the entirety (they each had an undivided interest in the whole) which they had acquired by four separate deeds. *Id.* at 1054–55. Thus, Smith's property retained its four-tract character after the transfer from his ex-wife, and the government was required to prove that each tract was forfeitable based upon each tract's role in facilitating the drug offense.

Myers, on the other hand, legally lost his interest in the farm through foreclosure and obtained a new interest in the property by repurchasing it as a single unit, at a single time, for a single price, and in a single instrument. Although the real estate contract utilizes the historical, two-tract description, the land is contiguous and was sold to Myers as a whole in a single instrument. Therefore, the district court did not abuse its discretion by instructing the jury to consider the farm as a single parcel of property.

■ Myers' final contention is that the forfeiture of his whole farm, including the parcel where Myers contends no crime occurred, constitutes an excessive fine in violation of the Eighth Amendment. Myers argues that only the parcel where the marijuana was grown is subject to forfeiture, not both parcels of the farm, and that forfeiture of the parcel where no marijuana was grown amounts to a constitutionally excessive fine. This argument is inconsistent with our view of the facts. We have already concluded that Myers' farm is one parcel of property for purposes of criminal forfeiture because of the manner in which he acquired his interest in the property. The entire farm was forfeitable because, as the jury determined, part of it was used to facilitate the drug trafficking and money laundering offenses. Thus, the only question is whether forfeiture of Myers' farm constitutes an excessive fine.

We recognize that the Eighth Amendment's prohibition against excessive fines applies to forfeitures because a criminal forfeiture is a "fine" for purposes of the Excessive Fines Clause.[4] *See Alexander v. United States,* — U.S. ——, —— – ——, 113 S.Ct. 2766, 2775–76, 125 L.Ed.2d 441 (1993). The Supreme Court has declined to establish a multifactor test for determining whether a forfeiture is constitutionally "excessive," preferring to leave that question to the lower courts in the first instance. *Austin v. United States,* — U.S. ——, ——, 113 S.Ct. 2801, 2812, 125 L.Ed.2d 488 (1993). We held in *Bieri,* 21 F.3d at 824, that a proportionality analysis requires a fact-specific evaluation of all of the circumstances of the defendant's criminal conduct, including the extent of a defendant's criminal drug activities and the amount of time that the defendant conducted those activities, in order to determine whether the forfeiture was unconstitutionally "excessive." *See Alexander,* — U.S. at —— – ——, 113 S.Ct. at 2775–76. Given the broad wording of the forfeiture statutes—that property is forfeitable if used "in any manner or part" to facilitate a drug crime, 21 U.S.C. § 853(a), or if "involved" in a money laundering offense, 18 U.S.C. § 982(a)(1)—and the large monetary fines already authorized by the Congress for drug traffickers we believe that a successful proportionality challenge to criminal forfeiture will be a rare occasion. *See United States v. Morse,* 983 F.2d 851,

4. *Alexander* involved forfeiture under the Racketeer Influenced and Corrupt Organizations Act (RICO), pursuant to 18 U.S.C. § 1963(a). This statute requires in part that "[t]he court, in imposing sentence on such person shall order, in addition to any other sentence imposed pursuant to this section, that the person forfeit to the United States all property described in this subsection." 18 U.S.C. § 1963(a). This language is identical to that found in 21 U.S.C. § 853(a) and is very similar to the language of 18 U.S.C. § 982(a)(1). Thus, we conclude that the criminal forfeiture under any of these statutes constitutes a "fine" for purposes of the Excessive Fines Clause. As we noted in *Bieri,* 21 F.3d at 814 n. 2, while a portion of the forfeiture language is the same, RICO does not contain any provision like § 853(d), and the statutory analogy to RICO cannot be completely carried over to the burden of proof. *See United States v. Pelullo,* 14 F.3d 881, 902–03 (3d Cir.1994). We also note a different legislative history for the drug forfeiture statute. *See id.* at 903.

855 (8th Cir.1993) (narrowly review sentences to determine . if "grossly disporportioned" to the crime).

In this case, the district court evaluated the proportionality of ordering forfeiture of Myers' farm and concluded that it was not constitutionally excessive to forfeit the whole. (Appellant's App. at 83–89.) The court found that although the forfeiture penalty here is harsh, it is not disproportionate to the serious crimes for which Myers was convicted. (*Id.* at 85.) The district court found that the defendant had an extensive marijuana-growing operation, that the property forfeited had been used in that operation, and that there was a close connection between the forfeited property and the marijuana-growing operation. (*Id.*) Myers failed to offer evidence of the value of the property, but a government appraisal indicated a value of $367,000. (*Id.* at 86 n. 5.) Because of the substantial debt on the property, unless it sold for over $400,-000, neither the defendant nor the United States would have equity in the property. (*Id.*) We conclude that these findings are supported by the record. It is evident in this case that the real property was extensively involved in facilitating the marijuana-growing operation by providing not only the location but an ideal concealment of the operation. Myers held himself out as a legitimate farmer, trucker, and salvage operator and successfully convinced others of the legitimacy of his business. Converting the farm into the marijuana operation took almost two years to complete. Accordingly, the district court did not err in determining that the forfeiture of the whole farm was not disproportionate under the Eighth Amendment.

Additionally, the entire farm was declared forfeitable by the jury pursuant to 18 U.S.C. § 982(a)(1) due to Myers' money laundering activities. The evidence is clear that Myers paid for equipment and items used in the marijuana operation from the account to which the laundered money had been transferred. Myers also made substantial payments on the real estate contract and improvements on the property from this account. Thus, the property was equally forfeitable on this theory because the property was clearly involved in the criminal activity

and the forfeiture is not disproportionate to the extent of the criminal offense.

## III. CONCLUSION

The district court did not err by instructing the jury to determine forfeiture under 21 U.S.C. § 853(a)(2) and 18 U.S.C. § 982(a)(1) by a preponderance of the evidence or by instructing the jury that the property in this case was not separable into two tracts for purposes of forfeiture. Finally, we conclude that the forfeiture was not disproportionate under the Eighth Amendment. Accordingly, we affirm the judgment of the district court.

JOHN R. GIBSON, Senior Circuit Judge, concurring in part and dissenting in part.

I concur in the court's determination that the preponderance of evidence standard should be utilized in a forfeiture proceeding. I respectfully dissent, however, with the utilization of the instrument of conveyance as the sole criteria for determining the propriety of forfeiture. I do so for the reasons expressed in my dissent in *United States v. Bieri*, 21 F.3d 811, 818 (8th Cir.1994). Here, the forfeiture issue was tried to the jury under proper instructions, but the extent of the forfeiture was the result of a direction by the court as a matter of law that the entire property be forfeited. The court did so in spite of questions directed by the jury as to whether less than the entire quantity of real estate should be forfeited. The instructions to the jury were preemptive and prevented the jury from determining whether forfeiture of less than all of the property was proper.