31 F.3d 35
 63 USLW 2131
 UNITED STATES of America, Plaintiff-Appellee-Cross-Appellant,
v.
TWO PARCELS OF PROPERTY LOCATED AT 19 AND 25 CASTLE STREET,
New Haven, Connecticut, with All Appurtenances and
Improvements Thereon, Defendant,
Jose Gonzalez, Virginia Gonzalez, Claimants-Appellants-Cross-Appellees,
New Haven Savings Bank, A & A Bail Bonds, Hospital of St.
Raphael, Claimants.
 Nos. 1130, 1289, Dockets 93-6109, 93-6155.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 11, 1994.
Decided July 18, 1994.
 
 John R. Williams, New Haven, CT, for claimants-appellants-cross-appellees.
 Alan Marc Soloway, Asst. U.S. Atty., Bridgeport, CT (Christopher F. Droney, U.S. Atty., D. Connecticut, New Haven, CT, of counsel), for plaintiff-appellee-cross-appellant.
 Before: PRATT, MINER and CAMPBELL, Circuit Judges.*
 MINER, Circuit Judge:
 
 
 1
 Claimants-appellants-cross-appellees Jose and Virginia Gonzalez appeal, and plaintiff-appellee-cross-appellant United States of America cross-appeals, from a judgment entered on April 21, 1993 in the United States District Court for the District of Connecticut (Daly, J.) after a bench trial. The judgment runs in favor of the Government on its civil forfeiture claim against in rem defendant 25 Castle Street and in favor of the Gonzalezes to the extent that it denies forfeiture of in rem defendant 19 Castle Street. The district court found that the Government had established a prima facie case that the parcels were subject to forfeiture by demonstrating probable cause that they were used to facilitate narcotics offenses, in violation of 21 U.S.C. Secs. 841(a)(1) & 844. The district court next found that Mr. and Mrs. Gonzalez had failed to establish an innocent owner defense under the provisions of section 881(a)(7) regarding 25 Castle Street because they had knowledge of, and consented to, the section 844 violation thereon. The court did find, however, that the Gonzalezes had established their innocent owner defense in connection with 19 Castle Street because they had no knowledge of the narcotics violations that took place on that property. Treating 19 Castle Street and 25 Castle Street as separate parcels in connection with its forfeiture analysis, the district court accordingly ruled that the Government was entitled to forfeiture only of 25 Castle Street.
 
 
 2
 On appeal, Mr. and Mrs. Gonzalez contend that the district court erred in concluding that they had failed to establish an innocent owner defense as to 25 Castle Street. By way of cross-appeal, the Government contends the district court erred in concluding that 19 Castle Street was a separate parcel under the forfeiture statute and that Mr. and Mrs. Gonzalez had established an innocent owner defense as to that parcel. For the reasons that follow, we affirm.
 
 BACKGROUND
 
 3
 The facts of this case are for the most part undisputed. The Gonzalezes purchased two adjacent parcels of property designated as 19 and 25 Castle Street, New Haven, Connecticut in 1975 from Mr. Gonzalez' brother. 25 Castle Street includes a three-floor, multi-family residence, and 19 Castle Street includes an unheated garage, with an apartment on the second floor. A driveway runs between the two parcels, but they are otherwise contiguous, with a chain-link fence circling the perimeter of the entire property.
 
 
 4
 Mr. and Mrs. Gonzalez live in an apartment on the first floor of the residence at 25 Castle Street. They have five children: Jose, Benjamin, Renaldo, Virginia and Doraida. Jose, Benjamin and Doraida live in the residence, Jose and Doraida in their parents' apartment and Benjamin in a separate apartment that includes the second and third floors. Aside from Virginia, who is married and lives in Florida with her family, all of the children have severe narcotics problems and have been convicted of narcotics-related offenses. All three sons have served prison time for their convictions.
 
 
 5
 Mr. and Mrs. Gonzalez first became aware that their children had narcotics problems in 1984. Subsequently, they sought to help the children end their narcotics dependence. For example, they sent Benjamin, Renaldo and Doraida at different times to live in Florida to get away from the local narcotics environment. However, they all eventually returned to New Haven. Mrs. Gonzalez also sought to enroll Jose in a drug rehabilitation program, but was informed that, since Jose was an adult, he had to enter the program voluntarily. Finally, it appears that the children, despite the intervention of their parents, continued to use narcotics, hid the narcotics from Mr. and Mrs. Gonzalez and repeatedly lied to them regarding their narcotics-related activity.
 
 
 6
 Narcotics sales occurred regularly on Castle Street in front of the Gonzalez property. Usually, automobiles would drive down the street and stop near the Gonzalez driveway, where someone would approach the vehicle to consummate a narcotics transaction. For example, a videotape made by the New Haven police during a December 9, 1988 sting operation showed a narcotics sale taking place approximately every ten minutes. Moreover, individuals were arrested for possessing and/or selling heroin at 25 Castle Street on at least seven different occasions. Finally, the police executed numerous search warrants in and around the Gonzalez property, resulting in the recovery of more than 100 packets of heroin.
 
 
 7
 During the execution of a search warrant at their home on November 22, 1989, Mr. and Mrs. Gonzalez were arrested after the police seized forty-two packets of heroin and some marijuana. Ten packets were recovered from the second-floor kitchen in the residence and thirty-two packets were recovered from the garage drainpipe. Charges against Mr. and Mrs. Gonzalez were dropped after Benjamin admitted that the heroin belonged to him. The evidence showed that Benjamin supervised a narcotics organization that sold heroin out of the residence. He kept his operations hidden from his parents by conducting sales from the residence only in their absence and moving sales down the street when they returned home from work. Mr. and Mrs. Gonzalez never were home during any police raid other than the November 22 raid, during which they were arrested, and claimed never to have seen illegal narcotics in their residence nor anyone use or sell illegal narcotics there. However, Mr. and Mrs. Gonzalez did learn of the raids after they occurred and were informed by the police on several occasions that narcotics and narcotics paraphernalia had been seized.
 
 
 8
 Mr. and Mrs. Gonzalez also were aware of narcotics activity on Castle Street. They asked the drug dealers to move away and reported the narcotics activity to the police. The dealers retaliated against them by throwing a rock through a window and vandalizing their fruit trees. The attacks discouraged Mr. and Mrs. Gonzalez from seeking to prevent further narcotics activity. Although Mr. and Mrs. Gonzalez were aware of their children's narcotics problems and the numerous seizures of narcotics, there is no evidence that they inspected their own property for narcotics or took any steps to prevent narcotics activity at the property.
 
 
 9
 On October 11, 1990, the Government filed a verified complaint seeking forfeiture of the parcels under 21 U.S.C. Sec. 881(a)(7) on the ground that the parcels were used to commit or facilitate the commission of a federal narcotics offense punishable by a prison term of more than one year. Mr. and Mrs. Gonzalez filed an answer that included an innocent owner defense under section 881(a)(7). Following a bench trial, the district court granted judgment in favor of the Government as to 25 Castle Street and judgment in favor of Mr. and Mrs. Gonzalez as to 19 Castle Street.
 
 
 10
 The court first found that the Government had met its burden of establishing probable cause that both 19 and 25 Castle Street were subject to forfeiture. The court determined that the Government had demonstrated that 25 Castle Street had been used to facilitate two separate felony narcotics violations: (1) the possession of narcotics with intent to distribute, in violation of 21 U.S.C. Sec. 841(a)(1); and (2) the possession of narcotics by a person previously convicted of a narcotics offense, in violation of 21 U.S.C. Sec. 844.[1] As to 19 Castle Street, the court determined that there was sufficient evidence to establish that the parcel bearing that address was used to facilitate the sale of heroin, in violation of section 841(a)(1).
 
 
 11
 The district court next addressed the innocent owner defense interposed by Mr. and Mrs. Gonzalez. The court found that Mr. and Mrs. Gonzalez did not have knowledge that 25 Castle Street was used to violate section 841(a); however, it did find that Mr. and Mrs. Gonzalez knew about the section 844 violations and consented to that illegal activity by not doing all that they reasonably could have done to prevent the offense. Accordingly, the court held that Mr. and Mrs. Gonzalez were not innocent owners as to 25 Castle Street and, therefore, that that parcel was subject to forfeiture. With regard to 19 Castle Street, the court concluded that Mr. and Mrs. Gonzalez did not know about or consent to any illegal narcotics activity at that location and, thus, had demonstrated an innocent owner defense as to that parcel. Finding that 19 Castle Street was a separate parcel from 25 Castle Street, the district court held that the Gonzalezes' interest in 19 Castle Street was not subject to forfeiture. Each party appeals from the portion of the judgment that was adverse to it.DISCUSSION
 
 
 12
 Under 21 U.S.C. Sec. 881(a)(7), the Government is entitled to seize and acquire by forfeiture
 
 
 13
 [a]ll real property, including any right, title, and interest ... in the whole of any lot or tract of land ..., which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment.
 
 
 14
 In order to meet its burden of proof in a civil forfeiture action, the Government must demonstrate probable cause that the property is subject to forfeiture. United States v. Banco Cafetero Panama, 797 F.2d 1154, 1160 (2d Cir.1986). This showing does not require proof by a preponderance of the evidence; instead, the Government only must establish "reasonable grounds, rising above the level of mere suspicion, to believe that certain property is subject to forfeiture." United States v. 15 Black Ledge Drive, 897 F.2d 97, 101 (2d Cir.1990).
 
 
 15
 Once the Government has established probable cause, the burden of proof shifts to the claimant opposing forfeiture. United States v. 303 W. 116th St., 901 F.2d 288, 291 (2d Cir.1990); Banco Cafetero Panama, 797 F.2d at 1160 (claimant bears "ultimate burden of proving that the factual predicates for forfeiture have not been met"). In order to defeat forfeiture, a claimant must prove by a preponderance of the evidence that either (1) the property was not used for an illegal purpose; or (2) the illegal use of the property was without his knowledge or consent. United States v. 785 St. Nicholas Ave., 983 F.2d 396, 403 (2d Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 2349, 124 L.Ed.2d 258 (1993); 303 W. 116th St., 901 F.2d at 291.
 
 
 16
 It is clear that the Government sustained its burden of showing probable cause in this case. Mr. and Mrs. Gonzalez do not dispute that the parcels were used to facilitate violations of the federal narcotics laws. There was overwhelming evidence submitted at trial demonstrating that 25 Castle Street was used to facilitate the crimes of possession of narcotics with intent to distribute, in violation of 21 U.S.C. Sec. 841(a)(1), and possession of narcotics by a person previously convicted of a narcotics offense, in violation of 21 U.S.C. Sec. 844.[2] Likewise, there was a sufficient showing as to 19 Castle Street. Because many narcotics sales took place in the driveway between the garage and the residence, and on the street in front of the garage, and because the thirty-two packets of heroin were found in the garage drainpipe on November 22, 1989, there were reasonable grounds to believe that the garage parcel was used to facilitate a violation of section 841(a)(1).
 
 
 17
 Nevertheless, Mr. and Mrs. Gonzalez contend that their property is not subject to forfeiture because they were innocent owners within the meaning of section 881(a)(7). To avoid forfeiture of the property under this defense, Mr. and Mrs. Gonzalez were required to prove, by a preponderance of the evidence, that the narcotics activity on the property occurred without their knowledge or, if they had knowledge of it, without their consent. 21 U.S.C. Sec. 881(a)(7); United States v. 755 Forest Rd., 985 F.2d 70, 72 (2d Cir.1993).
 
 
 18
 While the district court found that Mr. and Mrs. Gonzalez did not know that the residence at 25 Castle Street was used to distribute narcotics, in violation of section 841(a)(1), it is undisputed that they knew that it was used in violation of section 844. They were aware of their children's criminal records, and they also were aware that their children possessed narcotics in the residence. Accordingly, the viability of the innocent owner defense turns on whether Mr. and Mrs. Gonzalez consented to this illegal use of the residence. To demonstrate a lack of consent, a claimant who has knowledge of prohibited narcotics activity on his property must prove that he did "all that reasonably could be expected to prevent the illegal activity once he learned of it." United States v. 141st St. Corp., 911 F.2d 870, 879 (2d Cir.1990) (emphasis added), cert. denied, 498 U.S. 1109, 111 S.Ct. 1017, 112 L.Ed.2d 1099 (1991). In United States v. 418 57th Street, 922 F.2d 129 (2d Cir.1990), we explained this standard as follows:
 
 
 19
 Congress intentionally placed a significant burden upon owners to remain accountable for the legitimate use of their property. Therefore, we balance[ ] our determination of the knowledge-consent issue with a stringent interpretation of consent, defining it as 'the failure to take all reasonable steps to prevent illicit use of premises once one acquires knowledge of that use.' Unless an owner with knowledge can prove every action, reasonable under the circumstances, was taken to curtail the drug-related activity, consent is inferred and the property is subject to forfeiture.
 
 
 20
 Id. at 132 (citation omitted).
 
 
 21
 Mr. and Mrs. Gonzalez argue that they made this showing, pointing out that they pressed their children to stop using drugs, asked Jose to enter a drug rehabilitation program, sent Renaldo, Doraida and Benjamin to Florida to live with Virginia, and notified the police of narcotics activity in the neighborhood. We reject the argument because it appears to us that Mr. and Mrs. Gonzalez failed to undertake every reasonable means of preventing the narcotics activity at the residence. For instance, they did not conduct searches of the residence parcel to check for narcotics, despite knowing that their children previously had possessed narcotics there. This failure is magnified by the fact that, subsequent to the November 22, 1989 arrest of Mr. and Mrs. Gonzalez, the New Haven police conducted searches of the property on May 9, 1990 and June 14, 1990 that resulted in the recovery of more narcotics. Likewise, Mr. and Mrs. Gonzalez failed to seek police intervention to prevent narcotics activity at their residence. Although they were hesitant to do so because drug dealers had retaliated against them for informing the police about narcotics activity in the neighborhood, it would not have been unreasonable for them to ask the police to take some action in regard to the narcotics activity at their dwelling. Finally, Mr. and Mrs. Gonzalez could have given their adult children an ultimatum: Comply with the law or move out. In light of their failure to take these steps, Mr. and Mrs. Gonzalez cannot demonstrate that the use of the residence to facilitate a violation of the federal narcotics laws was without their consent. Accordingly, they cannot establish an innocent owner defense that precludes forfeiture of 25 Castle Street.
 
 
 22
 Although it gained forfeiture of 25 Castle Street, the Government contends that the district court erred in refusing to order forfeiture of 19 Castle Street. In reaching this conclusion, the district court treated 19 Castle Street as a separate parcel and found that the innocent owner defense had been established as to that parcel. Section 881(a)(7) provides for the forfeiture of "all real property ... in the whole of any lot or tract of land and any appurtenances and improvements." While it is well settled that an entire parcel is subject to forfeiture where even just a portion of that parcel is used to facilitate a narcotics offense, see 141st St. Corp., 911 F.2d at 880, it is not so clear whether a parcel is subject to forfeiture when an adjacent parcel owned by the same claimant is forfeitable. In order to resolve this issue, we must address a question that was left open in United States v. 4492 S. Livonia Rd., 889 F.2d 1258 (2d Cir.1989), namely, what constitutes the whole of any lot or tract of land under section 881(a)(7). See id. at 1270.
 
 
 23
 Some of our sister circuits already have addressed this issue. The Fourth, Sixth and Eighth Circuits all generally agree that the meaning of a lot or tract is defined by reference to the legal instruments and documents that create the property interest. See United States v. Bieri, 21 F.3d 819, 824 (8th Cir. Apr. 13, 1994) ("tracts of real property subject to forfeiture ... are defined by the instruments and documents that created the defendant's interest in the property") (internal quotations omitted); United States v. Smith, 966 F.2d 1045, 1053-54 (6th Cir.1992) (same); United States v. Santoro, 866 F.2d 1538, 1543 (4th Cir.1989) (whole of lot or tract of land "determined from the duly recorded instruments and documents filed in the county offices where the defendant property is located"). However, these courts have taken different approaches in applying this broad rule.
 
 
 24
 In Santoro, the Fourth Circuit concluded that the claimant's entire property was subject to forfeiture even though it was bisected by a road and had been taxed as two separate parcels, because the deed of conveyance described the property as a single, undivided tract. 866 F.2d at 1543. Accord United States v. Reynolds, 856 F.2d 675, 676-77 (4th Cir.1988). In Smith, a criminal forfeiture case under 21 U.S.C. Sec. 853, the Sixth Circuit concluded that a farm consisting of four tracts of land obtained through four conveyances on four different dates through four separate deeds of trust should be treated as separate parcels for forfeiture purposes. 966 F.2d at 1054-55. The court then analyzed each tract individually and found that three of the four tracts were subject to forfeiture. Id. at 1055-56. However, in Bieri, also a criminal forfeiture case under section 853, the Eighth Circuit concluded that a four-tract farm acquired by a single deed constituted one parcel for forfeiture purposes. 21 F.3d at 824. In so holding, the court found that the deed's description of four separate tracts was immaterial, because "[t]he critical facts are that the Bieris purchased the property as a whole, at a single time, that it was conveyed to them in one instrument, and that the property is contiguous." Id. Accord United States v. Myers, 21 F.3d 826 (8th Cir.1994).
 
 
 25
 The Government suggests that multiple parcels acquired through a single instrument of conveyance and treated as a unified whole constitute a single lot or tract. In support of its position, the Government relies on United States v. One Parcel Known as Plat 20, Lot 17, 960 F.2d 200, 205 (1st Cir.1992) and United States v. Sonny Mitchell Ctr., 934 F.2d 77, 78 n. 1 (5th Cir.1991) (per curiam). In One Parcel of Real Property, the First Circuit stated that "the government may treat as unitary, for purposes of an initial seizure warrant, any tract over which an owner or group of owners exercises dominion and treats as his/her/their own." 960 F.2d at 205. It also stated that "the government is justified in describing a seized tract in the usual and customary manner reflected in the local land records," id. at 206 (citing Santoro ), and noted that the Government in that case had described the property subject to forfeiture in the same manner as the deed, id. In dictum, the Fifth Circuit in Sonny Mitchell stated that a shopping center "might also be said to contain only one tract, since the [claimants] acquired all of the property ... in a single deed." 934 F.2d at 78 n. 1 (emphasis added).
 
 
 26
 We think that parcels of property separately described in the local land records, whether or not conveyed to an owner by a single instrument, should be considered separately for forfeiture purposes except where it is unreasonable or physically impossible to treat the property separately. Informing the assessment of unreasonableness would be such factors as zoning and planning requirements, how long ago the property was last held in separate ownership, the nature of the property and the manner in which the property is used. An example of physical impossibility would be where a building is constructed in such a way as to straddle two separately described parcels. Applying the foregoing rule to the facts of this case, we think the district court correctly determined that 19 and 25 Castle Street are separate lots or tracts. First, the quitclaim deed describes and conveys 19 and 25 Castle Street as separate parcels. Second, the parcels are divided physically by a driveway, with the residence on one side and the garage with finished apartment on the other side.[3] The fact that Mr. and Mrs. Gonzalez used 19 Castle Street as a garage for the residence at 25 Castle Street does not alter the result, nor does the fact that the entire property only is approximately one-quarter acre in size. It is not physically impossible to treat the parcels separately here, and it has not been shown that it is unreasonable to do so. Therefore, we conclude that application of a separate innocent owner analysis to each of these parcels is appropriate.
 
 
 27
 Finally, we conclude that the district court did not err in finding that Mr. and Mrs. Gonzalez were innocent owners as to 19 Castle Street. In its findings, the court determined that there was no evidence of narcotics activity occurring on the premises at 19 Castle Street, other than the seizure of the 32 packets on November 22, 1989, and noted that all the other narcotics activity occurred either at 25 Castle Street or on Castle Street itself. While this supported a showing of probable cause that 19 Castle Street was used to facilitate the distribution of narcotics, in violation of section 841(a)(1), the district court concluded that it was insufficient to rebut the Gonzalezes' innocent owner defense. Given the district court's finding that Mr. and Mrs. Gonzalez did not know that heroin was hidden in the garage or that the garage was used to facilitate narcotics transactions, we agree that the innocent owner defense was established as to 19 Castle Street. Therefore, the district court properly declined to direct forfeiture of 19 Castle Street.
 
 CONCLUSION
 
 28
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 *
 Honorable Levin H. Campbell of the United States Court of Appeals for the First Circuit, sitting by designation
 
 
 [1]
 Section 844 prohibits the unauthorized possession of controlled substances. An individual who violates this section after a prior federal or state narcotics conviction has become final can be sentenced to a maximum term of imprisonment of two years. An individual who has two or more prior convictions faces a maximum term of imprisonment of three years. This section also provides for enhanced sentences for possession of a substance containing cocaine base
 
 
 [2]
 The district court specifically noted that the Government had presented evidence that Benjamin and Doraida had possessed narcotics at the residence after they were convicted of narcotics offenses
 
 
 [3]
 Mrs. Gonzalez testified that a tenant had lived in the garage through 1990 and that it had electricity and running water at the time