**UNITED STATES of America, Plaintiff,**

v.

**ALL RIGHT, TITLE AND INTEREST IN REAL PROPERTY AND APPURTENANCES THERETO KNOWN AS 143–147 EAST 23RD STREET, NEW YORK, NEW YORK, LISTED AS BLOCK 879, LOT 27 WHICH INCLUDES THE KENMORE HOTEL, Defendant-in-rem.**

No. 94 Civ. 4148(MP).

United States District Court,
S.D. New York.

June 12, 1995.

Mary Jo White, U.S. Atty., for the S.D.N.Y. (Ellen Silverman Zimiles and Kenneth M. Karas, of counsel), New York City, for U.S.

Rochman, Platzer, Fallick, Rosmarin & Sternheim (Barry M. Fallick, of counsel), New York City, for claimant Jude Hotel Corp.

## OPINION

MILTON POLLACK, Senior District Judge:

This is an *in rem* civil forfeiture action pursuant to 21 U.S.C. § 881(a)(7). The government has moved for summary judgment under Fed.R.Civ.P. 56. The claimant-owner's sole argument against the proposed forfeiture is that it would violate the Excessive Fines Clause of the Eighth Amendment.

The motion will be granted for the reasons stated below.

### Background [1]

The defendant-in-rem, 143–147 East 23rd Street, New York, New York, consists of the Kenmore Hotel, a single room occupancy apartment building mainly occupied by poor or elderly tenants, four street-level commercial leaseholds, and a basement swimming pool. The building is across the street from Baruch College, two blocks away from a school for disabled children, and diagonally across from the headquarters of United Cerebral Palsy. Claimant Jude Hotel Corporation ("the claimant" or "Jude Hotel") owns the property. Jude Hotel's majority shareholder, Truong Dinh Tran, purchased the property for $7.9 million in November 1985, in order to generate losses that would shelter income from other hotels owned by Truong. Under Jude Hotel's management, the building has fallen into serious disrepair and accumulated numerous citations for housing code violations. Taking into consideration outstanding mortgages and liens and the costs to bring the building into conformity with the housing code, Jude Hotel's equity in the building is somewhere between $0 and $500,-000, based on an appraisal conducted in September 1994, and on two offers to purchase the building made in mid–1995.[2]

A brisk trade in crack cocaine developed at the Kenmore Hotel, the transactions being conducted in unoccupied apartments and in the common areas throughout the building. Between January 1991, and June 6, 1994, there were numerous narcotics arrests and reported incidents of narcotics-related activity in and around the Kenmore Hotel. New York police officers also seized drugs and drug paraphernalia, including hundreds of vials used to package crack cocaine, from vacant rooms and common areas of the building.

Based on the history of narcotics activity in the Kenmore Hotel, the Manhattan South Narcotics Division launched an investigation using undercover officers and a confidential informant to purchase narcotics in the Kenmore Hotel. This investigation established not only that drug dealing was widespread in

---

1. The facts recited herein are taken basically from the government's Statement of Material Facts Not in Dispute Pursuant to Civil Rule 3(g) and supporting documentation thereto. Counsel for the claimant Jude Hotel Corporation entered into a letter agreement with the government, a copy of which is appended to the government's memorandum of law, to have this matter resolved on the basis of the government's statement of undisputed facts.

However, on May 5, 1995, the claimant's majority shareholder, Truong Dinh Trang, submitted an unsolicited letter to the Court stating his own view of the facts. The government has responded by letter in which it alleges that Truong's allegations are either false, incomplete,

or irrelevant to the material issues of fact in this case. Neither of these letters is technically entitled to consideration as appropriate submissions for or on the pending motion; each lacks essential evidentiary character. *See* 28 U.S.C. § 1746 (permitting unsworn declarations to substitute with like force and effect for an affidavit only if "subscribed by [the declarant], as true under penalty of perjury"); *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir.1980) ("It is an unsworn statement, which the court may not consider in determining the propriety of summary judgment.").

2. This estimate does not take into account any liens that the United States Marshalls Service, which presently manages the Kenmore Hotel, may be entitled to impose on the property.

the building but also that the security guards at the Kenmore facilitated the narcotics trafficking. Although Jude Hotel intermittently employed some uniformed security guard services in 1993 and 1994, these services terminated their work at the Kenmore Hotel because of Truong's failure to pay them. In lieu of uniformed security guards, Truong hired tenants from the Kenmore Hotel and from the Carter Hotel, another of Truong's properties, paid them only $20 per eight-hour shift, and failed to provide them with uniforms or training. These security guards allowed potential drug buyers to gain access to the building and directed them to drug suppliers in return for a bribe. One guard offered to tell any police who inquired that undercover officers posing as buyers were merely visiting relatives at the hotel, and another warned an undercover officer entering the building that police were conducting an investigation inside. Some of the guards also sold drugs themselves.

Despite the extensive nature of the drug trafficking conducted at the Kenmore Hotel, complaints from tenants, and media coverage of the hotel's drug problem, Jude Hotel did virtually nothing to improve conditions. This was not for lack of notice. In November 1992, the Manhattan District Attorney's Office requested a meeting with Truong to discuss a strategy to combat drug trafficking at the Kenmore. In February 1993, La Tran, one of Truong's associates, met with Assistant District Attorney Anne Rudman, who advised him that the Kenmore Hotel was being used to facilitate drug trafficking and urged him to take reasonable steps to try to stop the drug activity, such as hiring full-time uniformed security guards, screening prospective tenants, using a surveillance camera, providing a photo identification card for tenants, and considering hiring a temporary management team to take over the hotel and clean it up. ADA Rudman also asked Tran to sign a form affidavit authorizing the NYPD to patrol all the floors and arrest trespassers, which Tran did not sign. These recommendations were subsequently memorialized in a letter to Tran dated February 25, 1993, which also informed Tran that officials would seek assistance from the federal government in bringing an action pursuant to the federal forfeiture laws in the event that his cooperation was not forthcoming.

In spite of the warnings, the claimant did not take any significant steps along the lines suggested by ADA Rudman, even though drug trafficking continued and even increased at the Kenmore Hotel after the meeting with Rudman. Although the claimant did install a buzzer on the front door, that buzzer broke within one week of its installation and was never fixed. Even though a surveillance camera was placed in the lobby of the Kenmore, the monitor was placed in the bedroom of one of Truong's associates and went largely unwatched. The claimant continued to employ tenants as security guards and failed to provide tenants with photo identification so that these guards, were they so inclined, could distinguish the hundreds of tenants that lived at the Kenmore at any given time from the numerous visitors to the Kenmore. The claimant also accepted over 100 tenants placed by a real estate company that regularly placed individuals who had come from prison or had criminal records, and the claimant did so without asking to see application forms that these tenants had completed for the real estate company. The claimant rented to these tenants even though some of them had already been rejected as tenants by the Carter Hotel.

On June 6, 1994, the government filed under seal a verified complaint against the property that sought forfeiture under 21 U.S.C. § 881(a)(7) based on distribution of cocaine at the Kenmore Hotel in violation of 21 U.S.C. § 841(a)(1). On the same day, the Honorable John E. Sprizzo, United States District Judge for the Southern District of New York, issued a seizure warrant pursuant to 21 U.S.C. § 881(b), permitting the Government to seize the Kenmore from Claimant Jude Hotel Corporation and to manage it pending the resolution of the Government's forfeiture action. In authorizing the seizure of the defendant-in-rem property, Judge Sprizzo found that there existed exigent circumstances that excused the Government from providing pre-seizure notice to the Claimant Jude Hotel Corporation and from

attending a pre-seizure hearing.[3] Under the authority of the seizure warrant issued by Judge Sprizzo, the Government seized the Kenmore Hotel on June 8, 1994.

### Discussion

### I. The property is subject to forfeiture.

■ The basis for the proposed forfeiture is 21 U.S.C. § 881(a)(7), which provides:

The following shall be subject to forfeiture to the United States and no property right shall exist in them:

\* \* \* \* \* \*

(7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

The government bears the initial burden of demonstrating probable cause to believe that the property is subject to forfeiture, and the claimant opposing forfeiture bears the ultimate burden of establishing one of two defenses to forfeiture: that the property was not in fact used for illegal purposes or that the illegal use was without the claimant's knowledge or consent. *See United States v. Two Parcels of Property at Castle Street,* 31 F.3d 35, 39 (2nd Cir.1994).

■ The government has established probable cause to believe that the Kenmore Hotel was used for drug trafficking in violation of 21 U.S.C. § 841(a)(1). *Cf. Castle Street,* 31 F.3d at 39 (holding that probable cause to forfeit a house was established by evidence that "many narcotics sales took place in the driveway between the garage and the residence, and on the street in front of the garage" and that "thirty-two packets

of heroin were found in the garage drainpipe"). The Court also finds that the claimant cannot as a matter of law meet its burden of establishing a defense to forfeiture. The claimant does not dispute that the Kenmore Hotel was used for drug trafficking and that the claimant knew about the trafficking. The claimant's token efforts to correct the problems that its own mismanagement and neglect helped to create, fall far short of the diligence required to establish lack of consent. *See United States v. 141st Street Corp.,* 911 F.2d 870, 879 (2nd Cir.1990) (holding that a claimant must prove "that he did all that reasonably could be expected to prevent the illegal activity once he learned of it" in order to establish lack of consent), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1017, 112 L.Ed.2d 1099 (1991).

### II. The proposed forfeiture is not excessive.

■ In *United States v. Certain Real Property and Premises Known as 38 Whalers Cove Drive, Babylon, New York,* 954 F.2d 29 (2nd Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 55, 121 L.Ed.2d 24 (1992) ("*Whalers Cove* "), the Court analyzed the excessiveness of an *in rem* forfeiture under a *proportionality* test that treated the challenged forfeiture as though it were a monetary fine equal in magnitude to the claimant's financial interest in the property and compared it to monetary fines that could be imposed on the sort of misconduct in which the claimant engaged. *Whalers Cove* dealt with a condominium in which the owner had a $68,000. equity interest and involved, inter alia, an Excessive Fines Clause challenge to the forfeiture pursuant to 21 U.S.C. § 881(a)(7) on account of the owner's sale of $250 worth of drugs inside the condominium. The Court first concluded that the forfeiture of the condominium was presumptively punitive because of the disparity between the value of the drugs sold and the claimant's equity interest and because the government did not contend that the condominium was forfeitable as an instrumentality of crime. *See id.* at 37. However, the Court then held that, it was not unconstitutionally excessive even if the forfei-

**3.** Claimant Jude Hotel Corporation has made no      challenge to Judge Sprizzo's seizure warrant.

ture were in fact punitive in nature ("[j]udging from the penal laws of the United States and the various states mentioned above [in the Court's discussion of a challenge to the forfeiture under the Cruel and Unusual Punishments Clause], a fine of many thousands of dollars for a minor drug offense is not beyond the pale." *Id.* at 39).[4]

Subsequent to *Whalers Cove,* the Supreme Court considered the applicability of the Excessive Fines Clause in *Austin v. United States,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) and ruled that the Excessive Fines Clause applied to all forfeitures under 21 U.S.C. § 881(a)(4) and (a)(7), because "forfeiture under these provisions constitutes 'payment to a sovereign as punishment for some offense' . . . ." *Id.* at ——, 113 S.Ct. at 2812 (quoting *Browning–Ferris Industries, Inc. v. Kelco,* 492 U.S. 257, 265, 109 S.Ct. 2909, 2915, 106 L.Ed.2d 219 (1989)).

*Austin v. United States* does not overrule *Whalers Cove's* proportionality test of excessiveness. The Supreme Court expressly declined to place limits on and failed to express standards by which to determine whether a particular forfeiture was excessive. *See Austin,* —— U.S. at —— n. 15, 113 S.Ct. at 2812 n. 15 ("We do not rule out the possibility that the connection between the property and the offense may be relevant, but our decision today in no way limits the Court of Appeals from considering other factors in determining whether the forfeiture of Austin's property was excessive."). Thus, a subsequent district court case relied again on the doctrine of *Whalers Cove* in the determination of what

constitutes excessiveness. "The majority opinion in *Austin* clearly and unequivocally stated that it was for the circuit courts to fashion appropriate tests to determine whether a forfeiture is constitutionally excessive, and in this Circuit *Whalers Cove* controls." *United States v. Real Property: 835 Seventh Street Rensselaer, Rensselaer County, New York,* 832 F.Supp. 43, 48 (N.D.N.Y. 1993) (citation omitted) (declining to reconsider summary judgment in favor of claimant, in which the court held that the proposed forfeiture violated the Cruel and Unusual Punishments Clause of the Eight Amendment, where the government argued that *Austin* required a different analysis of Eighth Amendment challenges to *in rem* forfeitures).[5]

However, *Austin* does create some uncertainty as to the proper comparison to be made under the *Whalers Cove* proportionality test. In *Whalers Cove,* the Second Circuit compared the forfeiture to the fines that various jurisdictions might impose on one who sells drugs. However, the majority in *Austin* concluded that the traditional justifications for *in rem* forfeiture "rest, at bottom, on the notion that the owner has been negligent in allowing its property to be misused and that he is properly punished for that negligence." *Austin,* —— U.S. at ——, 113 S.Ct. at 2808. This suggests that the proper comparison is to the monetary fines that might be imposed on an owner for permitting his property to be used as a site for drug trafficking, especially in a case in which the claimant itself did not sell drugs. Because

---

**4.** The Court does not interpret *Whalers Cove* to mean that the government can never obtain the forfeiture of property whose value far exceeds the magnitude of the monetary fines that could be imposed on the claimant's misconduct. The *Whalers Cove* Court was careful to note that it did not determine "at exactly what point a fine or forfeiture might violate the Excessive Fines Clause, because wherever such a line could be drawn, this forfeiture would be proper." *Id. Whalers Cove* does not tell us what an excessive forfeiture *is,* only what it is *not;* it is essentially a "safe harbor" rule for *in rem* forfeitures.

**5.** The claimant has cited *U.S. v. Premises Known as RR No. 1,* 14 F.3d 864 (3rd Cir.1994), as questioning the continuing validity of *Whalers Cove.* However, that case does not question the

validity of the test that the Second Circuit applied once it determined that the Excessive Fines Clause was implicated by the facts of the case. The Third Circuit's opinion questioned the validity only of the Second Circuit's analysis of the applicability of the Excessive Fines Clause. *See Premises Known as RR No. 1,* 14 F.3d at 874 (noting that "[i]n light of the Supreme Court's holding in *Austin* that all civil forfeitures under § 881(a)(7) constitute punishment limited by the Eighth Amendment's Excessive Fines Clause, the analysis of the court of appeals in *38 Whalers Cove Drive* is questionable" but also recommending to district court on remand of Excessive Fines Clause issue that "the [proportionality] factors articulated in *38 Whalers Cove Drive* may offer some help in analyzing the excessiveness issue.").

the owner in *Whalers Cove* both sold drugs and allowed his property to be used to sell drugs, so that the forfeiture could be viewed as punishment for either type of misconduct, this question was not clearly presented to the Second Circuit in *Whalers Cove*.

Regardless of this uncertainty, the forfeiture proposed in this case does not violate the Excessive Fines Clause. The claimant's equity in the Kenmore Hotel is estimated to be between $0 and $500,000, so the proposed forfeiture is, for purposes of a *Whalers Cove* analysis, equivalent to a monetary fine of up to $500,000. Viewed as punishment for the claimant permitting its property to be used for drug trafficking, such a fine is not excessive. 21 U.S.C. § 856(a)(2) makes it a criminal offense to

> manage or control any building, room, or enclosure, either as an owner, lessee, agent, employee, or mortgagee, and knowingly and intentionally rent, lease, or make available for use, with or without compensation, the building, room, or enclosure for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance.

A colorable criminal case may exist under this statute against the claimant; indeed, one court of appeals has sustained a conviction under § 856(a)(2) on facts similar to those in the instant action. *See United States v. Chen*, 913 F.2d 183, 191 (5th Cir.1990) (affirming conviction under § 856(a)(2) of owner of a motel who was aware of (or at least willfully blind to) the fact that the motel had been overrun by drug dealers and holding that "§ 856(a)(2) does not require the person who makes the place available to others for drug activity to possess the purpose of engaging in illegal activity; the purpose in issue is that of the person renting or otherwise using the place."). A violation of this statute subjects a corporate defendant to a fine of up to $2,000,000, an amount at least four times greater than the claimant's equity interest in the Kenmore Hotel. *See* 21 U.S.C. § 856(b). Nor is the forfeiture unconstitutionally excessive when viewed as punishment for the underlying drug sales. Under 21 U.S.C. § 841(b)(1)(C), distribution of any amount of cocaine under 500 grams is punishable by a fine of up to $1,000,000 for an individual defendant and up to $5,000,000 for a corporate defendant, and given the extent of the drug trafficking at the Kenmore Hotel, the weight of cocaine sold there may far exceed 500 grams.

## III. The claimant would not prevail under the test that it proposes.

The claimant has urged this Court to apply a multifactor test of the claimant's own invention, under which "the government [must] show that the claimant was culpable and that the property was a material part of serious criminal activity." Claimant's Brief at 14. The claimant argues that the proposed forfeiture would be unconstitutionally excessive under its test, because Jude Hotel's lack of active participation in any narcotics trafficking absolves it of any culpability punishable by forfeiture and because the property itself is not sufficiently related to the trafficking to be forfeited, the Kenmore Hotel being merely a place where drugs happened to be sold.

The Court has concluded, however, that the Second Circuit in *Whalers Cove* has adopted a *proportionality* analysis that remains the law in this Circuit. Even if the Second Circuit were to apply the claimant's suggested factors, the forfeiture of the Kenmore Hotel would still not violate the Excessive Fines Clause. Both prongs of the claimant's test point in favor of permitting the proposed forfeiture: Jude Hotel is culpable for the drug trafficking at the Kenmore Hotel, and a substantial relationship does exist between the hotel and the trafficking that occurred there.

Jude Hotel's attempt to deny its culpability for the narcotics trafficking is contradicted by the undisputed facts of this case, which establish that the claimant failed to take any significant action to stop drug trafficking at the Kenmore despite receiving ample notice of the problem. The claimant's management of the hotel facilitated its use as a site for drug trafficking: its practice of using inadequately paid and untrained tenants as security guards for the Kenmore Hotel affirmatively facilitated drug trafficking at the Kenmore by creating an incentive for these "guards" to accept bribes in return for access to the hotel

and otherwise to cooperate with the drug dealers, its failure to secure vacant apartments supplied drug dealers with locations for storing and selling drugs, and its willful blindness to the dangers of accepting tenants without making any effort to check their backgrounds.[6]

The relationship between the Kenmore Hotel and the drug trafficking that occurred there is sufficiently strong to sustain the proposed forfeiture against an Excessive Fines Clause challenge. The Kenmore Hotel provided seclusion and privacy for the consummation of drug transactions and for the storage of drugs and drug paraphernalia. Four courts that have interpreted the Excessive Fines Clause to require a showing of a relationship between the forfeited property and illegal activity have found this relationship to be sufficient. *See United States v. Chandler*, 36 F.3d 358, 366 (4th Cir.1994) ("While it would appear that the farm had substantial purposes other than serving as an instrument of drug activity, the property nevertheless was an important, if not necessary, instrument for the drug activity, in providing a secluded location."); *cert. denied*, — U.S. —, 115 S.Ct. 1792, 131 L.Ed.2d 721 (1995). *U.S. v. 9844 South Titan Court, Unit 9, Littleton, Colorado*, 865 F.Supp. 709, 715 (D.Colo.1994) (holding that residence had sufficient connection to drug trafficking because its owner intentionally selected it "to conduct his drug activity in secret and secure from detection from the public and police" and because "the property was used to store the cocaine, store the money, take phone calls, and conceal weapons."); *United States v. One Parcel Property*, 853 F.Supp. 1389, 1399, 1402 (M.D.Ala. 1994) (holding that the government could establish the existence of a substantial connection between a grocery store and drug trafficking by proving "a pattern of illegal activities occurring at the defendant real property" and noting that the apparent legitimacy of the store "facilitated drug trafficking by making detection more difficult."); *United States v. One Parcel Property Located at 9638 Chicago Heights, St. Louis, Missouri*, 831 F.Supp. 736, 737 (E.D.Mo.1993) (holding that forfeiture was not excessive because "Defendant real property was used as the situs for the storage and sale of cocaine and crack cocaine."), *reversed on other grounds*, 27 F.3d 327 (8th Cir.1994).

Claimant relies on *United States v. Real Property at 6625 Zumirez Drive*, 845 F.Supp. 725 (C.D.Cal.1994), for the proposition that "the mere fact that the criminal activity occurred at the property does not make the property 'guilty' of an offense...." *Id.* at 737 (quoting *United States v. James Daniel Good Real Property*, — U.S. —, —, 114 S.Ct. 492, 515, 126 L.Ed.2d 490 (1993) (Thomas, J. concurring in part and dissenting in part)). That case is distinguishable from the instant action, because the *6625 Zumirez Drive* court based its holding on the conclusion that the property did not to any special degree facilitate the concealment of drug activity. In reaching that conclusion, the court rejected as "mere conjecture" the government's argument that "a legitimate leather goods business on the property provided a cloak of legitimacy to the illegal drug traffickers who frequented the house." *Id.* In the instant action, however, the fact that a security guard at the Kenmore Hotel offered to tell police that undercover officers posing as drug buyers were visiting relatives at the Kenmore Hotel removes from the realm of "mere conjecture" the inference that drug buyers were exploiting the appearance of legitimacy inherent in visiting a hotel. The undisputed facts of the instant case demonstrate that, under the claimant's management, the Kenmore Hotel

---

**6.** The claimant contends that the actions of the security guards cannot be imputed to it in order to support a finding that Jude Hotel is culpable for the drug trafficking, because the guards supposedly were not acting to benefit the claimant. The claimant relies on *United States v. 4657 Acres in Martin County*, 730 F.Supp. 423, 426–27 (S.D.Fla.1989), which held that, for purposes of defeating the innocent owner defense under 21 U.S.C. § 881(a)(7), neither knowledge of nor consent to drug trafficking in which 0.31% shareholder participated cannot be imputed to the corporation that owned the property sought to be forfeited, where the corporation did not stand to benefit from its shareholder's unauthorized actions. This reliance is misplaced. No imputation of the guards' wrongdoing is necessary to establish that Jude Hotel knew about and consented to the drug trafficking occurring at the Kenmore Hotel.

provided a degree of seclusion for drug activity in excess of the seclusion that one could obtain from an ordinary hotel. The physical decay of the hotel itself provided drug traffickers with unlocked, vacant rooms in which to store their drugs, and the defective door buzzer and the location of the security camera monitor facilitated illicit access to the building. The ineffectiveness and corruption of the tenant-guards has already been described.

### Conclusion

The government's motion for summary judgment is granted. Submit judgment accordingly.