UNITED STATES of America,
Plaintiff,

v.

REAL PROPERTY LOCATED AT 14420 TUKWILA INTERNATIONAL BOULEVARD, TUKWILA, WASHINGTON, KING COUNTY PARCEL NUMBER 004000–0175, et al., Defendants.

Case No. C13–1532–JCC.

United States District Court,
W.D. Washington,
at Seattle.

Sept. 18, 2013.

Jill Otake, Justin Wells Arnold, Richard Edward Cohen, U.S. Attorney's Office, Seattle, WA, for Plaintiff.

Gilbert Henry Levy, Gilbert H. Levy, Attorney–at–Law, Seattle, WA, for Defendants.

## ORDER

JOHN C. COUGHENOUR, District Judge.

Before this Court is the matter of an *ex parte* seizure of three pieces of real property: 14420 Tukwila International Boulevard, Tukwila, Washington, also known as the Great Bear Motor Inn ("Great Bear"); 14440 Tukwila International Boulevard, Tukwila, Washington, also known as the Boulevard Motel ("Boulevard"); and 3747 S. 146th Street, Tukwila, Washington, also known as the Traveler's Choice Motel ("Traveler's Choice"). Claimants Kulwinder Saroya, Jaspal Singh, and Lakhvir Pawar contest the propriety of the seizure and request that the property be returned to them, and that they be reimbursed for lost profits. (Dkt. Nos. 10, 25, 27.) At a hearing to determine the propriety of the *ex parte* seizure, Claimants Jaspar & Puar, LLC and Kulbit Puar similarly challenged the initial seizure of the property.

## I. BACKGROUND

The seizure of this property arises after a year-long investigation into alleged illegal activities occurring in the three defendant motels. Kulwinder Saroya, Jaspal Singh, and Lakhvit Pawar ("Claimant Owners") appear to be the owners and operators of the motels. (Dkt. No. 1 at 11–13, ¶¶ 8–15.) Agent Miller asserts a number of grounds for finding probable cause to believe that Defendant Properties were used for illegal purposes, and that Claimant Owners profited from that illegal use. (*See generally id.* at 24–36.) He also asserts that Claimant Owners knew of and facilitated the illegal activity, in part because each of the Claimant Owners, allegedly directed individuals asking to purchase narcotics to drug-dealers, while charging a "visitor's fee," though not all of the attempted purchases were successful. (*See id.* at 21–23, 29–35, ¶¶ 39–43, 59–75.) Finally, Agent Miller asserts that the motels, as well as the nearby Ramada Inn— also allegedly owned by Claimant Owners—were used at least partly to launder

illegal proceeds. (*See id.* at 39–44, ¶¶ 81–94.) On August 26, 2013, Magistrate Judge Mary Alice Theiler made an *ex parte* determination that there was probable cause for forfeiture, and that exigent circumstances existed to permit the seizure pursuant to 18 U.S.C. § 985(d)(1)(B)(ii). *In the Matter of the Seizure of Real Property Located at 14420 Tukwila International Boulevard, Tukwila, Washington, et al.*, Case No. MS13–0125–MAT, Dkt. Nos. 2–4 (W.D.Wash. Aug. 26, 2013).

Three witnesses testified at a post-seizure hearing held on September 16, 2013. The Court finds all witnesses to be credible. The witnesses did not materially contradict one another. Chris Partman, the Community Policing Coordinator of the Tukwila Police Department, testified regarding the history of calls-for-service to the Tukwila Police Department from the three motels, how that history compares unfavorably to other motels, and her interactions with the Claimant Owners regarding the relatively high calls-for-service ratio. Ms. Partman testified that all calls-for-service from the motels were factored into the calls-for-service ratio, including calls made by the motel owners or managers.

Ms. Partman also testified regarding the local chronic nuisance ordinance and its application to the three motels. Specifically, she testified that the Great Bear had been found to be a chronic nuisance just before it was purchased by Lakhvir Pawar and Kulwinder Saroya, due to the number of serious crimes, such as assaults, thefts, robberies, drug-related crimes, and prostitution that occurred on the premises. She testified that the City of Tukwila ("Tukwila") had also unofficially found the Boule-

vard to be a nuisance for the same reasons, but that she was asked by a law enforcement officer not to send the nuisance letter to the owner/manager of that motel because there was an ongoing undercover operation. Finally, she testified that she did not send a nuisance letter to the owners of the Traveler's Choice because Tukwila was prioritizing nuisance complaints to include only the top three crime-affected properties in the area.

Next, Joseph Bisbee, Supervisory Special Agent in the Bureau of Alcohol, Tobacco, and Firearms ("ATF"), testified regarding portions of the investigation into the three motels. The probable cause affidavit created by Agent Miller, (Dkt. No. 1 at 9–48), was entered into evidence.[1] Agent Bisbee testified regarding an ATF agent's attempts to purchase narcotics at the Great Bear. He also testified regarding several confidential informants' purchases of narcotics at Defendant motels, and the circumstances behind the seizures of the motels themselves. Agent Bisbee was not aware that Tukwila was planning on categorizing the Great Bear and the Boulevard as chronic nuisance properties, but he did eventually become aware that Tukwila was preparing to purchase those two motels from their owners.

Finally, Derek Speck, the Economic Development Administrator for Tukwila, testified regarding plans by Tukwila to purchase the Great Bear and the Boulevard from their respective owners, and to seize the property using eminent domain if negotiations did not result in mutually agreeable purchasing contracts.

## II. DISCUSSION

Except as provided in 18 U.S.C. § 985, "real property that is the subject of a civil

---

1. Because this document is already posted to the Docket (*see* Dkt. No. 1 at 9–48), citations to the Affidavit in this Order will reference Docket Number 1, rather than Plaintiff's Exhibit 1.

forfeiture action shall not be seized before entry of an order of forfeiture." 18 U.S.C. § 985(b)(1)(A). The government is only allowed to seize real property prior to the entry of an order of forfeiture without notice if the court "makes an ex parte determination that there is probable cause for the forfeiture and that there are exigent circumstances that permit the Government to seize the property without prior notice." 18 U.S.C. § 985(d)(1)(B)(ii).

Here, Claimant Owners challenge the seizure of the property on two bases: first, that the Magistrate Judge did not have jurisdiction to issue an *ex parte* warrant to seize the property; and second, that the government did not establish probable cause and exigent circumstances prior to the seizure.

## A. The Magistrate Judge's Jurisdiction

■ Claimant Owners argue that the jurisdictional grant to Magistrate Judges is laid out in 28 U.S.C. § 636, and nothing in that section explicitly grants Magistrate Judges the power to order the *ex parte* seizure of real property under 18 U.S.C. § 985. However, 18 U.S.C. § 985 specifies that pre-seizure *ex parte* determinations of probable cause and exigent circumstances are made by "the court," and not "a judge." 18 U.S.C. § 985(d)(1)(B). In 1989, Federal Rule of Criminal Procedure 41 was specifically amended to allow a "court" rather than a "judge" to receive evidence under certain circumstances. This was "to clarify that a magistrate may receive evidence in the course of making a

finding or a proposed finding for consideration by the district judge." Fed.R. Crim.P. 41 Advisory Committee's Note (1989). "In common parlance, the word 'court' refers to both magistrate judges and district judges collectively." *United States v. Douleh*, 220 F.R.D. 391, 394 (W.D.N.Y.2003). Thus, the Magistrate Judge had jurisdiction to order the *ex parte* seizure. *See also United States v. Real Property Located at 1184 Drycreek Road, Granville, Ohio*, 174 F.3d 720, 725 (6th Cir.1999) (pre-§ 985 case where magistrate judge ordered *ex parte* seizure of property); *United States v. Property Identified as 410 11th Street, N.E. Unit Number 23, Washington, D.C.*, 903 F.Supp. 158, 159 (D.D.C.1995) (same).

## B. Probable Cause and Exigent Circumstances

Claimant Owners also argue that the government did not sufficiently demonstrate probable cause and exigent circumstances during the *ex parte* application to seize the property.

### 1. Probable Cause

■ The government argues that there is probable cause to conclude that the three motels were used to facilitate the distribution of narcotics in violation of 21 U.S.C. § 841(a)(1),[2] and were maintained by its owners or managers as drug-involved premises in violation of 21 U.S.C. § 856(a).[3] If that is the case, then there is probable cause to believe that each of the motels is subject to forfeiture to the United States pursuant to 21 U.S.C.

---

**2.** It is unlawful for any person knowingly or intentionally "to ... distribute, or dispense, or possess with intent to ... distribute, or dispense, a controlled substance."

**3.** It is unlawful to "knowingly open, lease, rent, use, or maintain" a piece of property for the purpose of distributing or using any controlled substance. It is also unlawful to

"manage or control any place ... either as an owner [or] employee ... and knowingly and intentionally rent, lease, profit from, or make available for use, with or without compensation, the place for the purpose of unlawfully ... storing, distributing, or using a controlled substance." 21 U.S.C. § 856.

§ 881(a)(7).[4] To demonstrate probable cause, the government need demonstrate " 'only the probability, and not a prima facie showing, of criminal activity.' " *Illinois v. Gates,* 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (quoting *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)). Probable cause is determined through the use of a "totality-of-the-circumstances analysis, which permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability)" of the evidence presented to the Court. *Id.* at 234, 103 S.Ct. 2317.

In support of its contention that there is probable cause to believe that the motels will be subject to forfeiture, the government offers evidence that Kulwinder Saroya, Lakhvir Pawar, and Jaspar Singh each individually participated in at least one transaction where they directed either an undercover officer, or a confidential informant, to a drug-dealer for the purpose of purchasing narcotics. (*Id.* at 29, 30–32, 32–35, ¶¶ 59–60, 61–67, 68–75.) Moreover, the government alleges that Kulwinder Saroya made a *post-Miranda* statement after an earlier arrest that he routinely charges visitors ten dollars to enter the Traveler's Choice, and that the owners of the Great Bear and the Boulevard do the same. (*Id.* at 22, ¶ 40).

Claimant Owners argue that the confidential informants, given their possible drug problems and the fact that they were paid by the government, are insufficiently reliable to implicate Claimant Owners in criminal activities. However, Agent Bisbee noted that he had listened to recordings of the confidential informants' attempts to purchase narcotics, which increases the reliability of the evidence. Moreover, even if that had not been the case, the number of consistent stories told by the confidential informants, when combined with Kulwinder Saroya's statements, the financial investigations performed by the ATF, and other information from undercover officers, would still be sufficient to find probable cause under a totality-of-the-circumstances analysis.

To the extent that Claimants Jaspal & Puar, LLC, and Kulbit Puar argue that they are the true owners of the Boulevard, and probable cause does not exist to believe that they were engaged in the illegal acts justifying forfeiture, they cannot sufficiently rebut the government's evidence that the property itself is subject to forfeiture. It is possible that those two claimants will be able to demonstrate that they are innocent owners during the forfeiture proceeding. However, to the extent there were a significant number of illegal acts taking place at the motel and there is probable cause to believe that the motel manager knew of and facilitated those activities, there is probable cause to believe that the "real property ... [was] used ... to commit or facilitate" the maintaining of drug-involved premises. 21 U.S.C. § 881.

The Court finds probable cause to believe that the three motels are subject to forfeiture.

### 2. Exigent Circumstances

■ Even if there is probable cause to seize the property, the government must still establish the existence of exigent circumstances, that "less restrictive measures such as a lis pendens, restraining order, or bond would not suffice to protect the Government's interests in preventing the sale, destruction, or continued unlawful use of

4. Any real property used "in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment" is subject to forfeiture. 21 U.S.C. § 881.

the real property." 18 U.S.C. § 985(e). This is a codification of the standard laid out in *Good. United States v. James Daniel Good Real Property,* 510 U.S. 43, 62, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993). There is little authority interpreting when exigent circumstances exist.

In one case, exigent circumstances were found when gambling continued on the premises even after the Government filed a *lis pendens. See United States v. Real Property Located at 2105 9th Street, Meridian, Miss.,* Case No. 4:13–cv–0007–HSO–RHW, 2013 WL 3148144, at *2 (S.D.Miss. June 19, 2013); *see also United States v. Real Property Located at 263 Weatherbrook Lane, Anniston, Alabama,* 202 F.Supp.2d 1275, 1278 (N.D.Ala.2002) (finding exigent circumstances where the property was "continuing to be used deliberately by Claimants and their employees as a base of prostitution and money laundering operations[ ] following commencement of the forfeiture action and even after state search warrants were executed"). Exigent circumstances have also been found where "[t]he on-going drug-related activity recounted in the seizure warrant affidavit was not stopped by [Claimant Owner's] arrests, the execution of multiple search warrants, or the arrest of [an inhabitant of the seized property]." *United States v. Property Identified as 410 11th Street, N.E. Unit No. 23, Washington, D.C.,* 903 F.Supp. 158, 160 (D.D.C. 1995).[5]

Even after being repeatedly warned regarding the high calls-for-service ratio, and a nuisance order was entered against at least one of the properties, Claimant Owners allegedly facilitated drug transactions at the motels. (Dkt. No. 1 at 29–35, ¶¶ 59–75). Just one month after one of the Claimant Owners was arrested for assaulting someone at the motel partly because she refused to pay a "visitor's fee," a confidential informant returned to the same motel and purchased narcotics there. (*Id.* at 22–23, ¶¶ 42–43). During his arrest, that Claimant Owner admitted that he charged people ten dollars to come onto the property, and that the Great Bear and the Boulevard did the same. (*Id.* at 22, ¶ 40). However, after that arrest, narcotics activity did not significantly decrease, and there is probable cause to believe that some of the Claimant Owners themselves facilitated additional narcotics transactions. *See 410 11th Street, N.E. Unit No. 23,* 903 F.Supp. at 160 (one factor in finding exigency is whether law enforcement activity worked to stop the illegal activity).

It is concededly true that none of the motels ever failed any inspections. Moreover, while the original nuisance order drafted to and sent by Ms. Partman required the banning of cash transactions, that nuisance order was appealed and modified to allow those transactions to continue. No evidence was presented demonstrating that the Claimant Owners violated any nuisance orders. However, the fact that Claimant Owners allegedly continued directing individuals to drug-dealers to purchase narcotics, even as they complied with the local ordinances, suggests that the local ordinances were ineffective in preventing the facilitation of illegal activity on the property.

Claimant Owners make three additional specific arguments regarding non-seizure

---

**5.** The government also points to a case predating the statute but interpreting identical language, where the property was seized in circumstances very similar to those alleged here. *See United States v. All Right, Title and Interest in Real Property and Appurtenances Thereto Known as 143–147 East 23rd Street, New York, New York,* 888 F.Supp. 580 (S.D.N.Y.1995). However, that case is of limited value, as the claimant did not contest the initial seizure at a post-seizure hearing. *Id.* at 583 n. 3.

steps that they believe should disqualify the government from successfully asserting exigent circumstances.

### a. Eminent Domain and Power to Purchase

■ First, Claimant Owners of the Boulevard and the Great Bear argue that, because Tukwila had decided to either purchase those properties, or use eminent domain to take possession of them, a purchase (forced or voluntary) was the least restrictive manner of preventing the continued illegal use of the property. This argument, however, has two flaws. First, Tukwila's ability to force a purchase of the property does not necessarily affect in any way the federal government's ability to seize the property under the federal forfeiture statute. Because Tukwila is not a creature of the federal government, its right to purchase the property does not affect the federal government's ability to seize the property.

■ Second, eminent domain cannot be one of the potential alternatives to seizure under § 985. Eminent domain is not remotely analogous to a lis pendens, restraining order, or bond. *See* 18 U.S.C. § 985. Furthermore, in attempting to proceed via civil forfeiture, the government is making a claim of right to the property, by arguing that the current owners do not have the right to continued possession. In contrast, eminent domain is an acknowledgment of the current owners' right of possession, and a subsequent forced sale. But eminent domain is not a substitute for either forfeiture or a temporary seizure of the property pending the forfeiture hearing.

### b. Appointing a Manager

■ Claimant Owners also argue that the government should have appointed a temporary manager of the motels, to take possession and ensure their safety during the forfeiture proceeding. However, even assuming, for the sake of argument, that it would be possible for the government to find and appoint a manager, such an action is drastically different from any of the other potential remedies outlined in the statute. § 985 specifies that exigent circumstances exist where "less restrictive measures *such as* a lis pendens, restraining order, or bond" would not suffice to protect the government's interest in preventing the continued unlawful use of the property. 18 U.S.C. § 985(d)(2) (emphasis added). Thus, the government need only demonstrate that less restrictive measures of a kind similar to a lis pendens, restraining order, or bond would be ineffective. Requesting that the government run the motel—or find, hire, appoint a manager to run the motel—is a completely different sort of remedy than those listed in the statute or the *Good* decision. It involves an order of magnitude more complexity and involvement in the property, long before it has been demonstrated that the property might be subject to forfeiture.

### c. Nuisance Orders

Finally, Claimant Owners argue that less restrictive alternatives existed with respect to the Boulevard and the Traveler's Choice, because those two motels could have been subjected to Tukwila nuisance orders, rather than outright seizure.[6] Indeed, while Ms. Partman testified that she originally intended to send a nuisance order to the owners of the Boulevard, she did not do so after being instructed to

---

**6.** This argument does not apply to the Great Bear, as such a nuisance order had been entered against it, with apparently little re-

sult. (*See* Dkt. No. 1 at 18–19, ¶¶ 26–30; Dkt. No. 50, Ex. 22, 24).

"hold off" by an undercover officer investigating the properties. Moreover, Tukwila did not send a nuisance order to the Traveler's Choice, though in theory it may have qualified under the ordinance. Thus, Claimant Owners argue, a nuisance order might qualify as a "less restrictive" alternative to seizure.

 Tukwila is not under the control of the federal government, and principles of federalism prevent the federal government from ordering Tukwila to enforce its own ordinances against a particular party. Still, Tukwila and the federal government were working closely together in investigating the properties. Of course, based on the testimony of Agent Bisbee and Chris Partman, it does not appear that it was a federal agent that directed the Tukwila officials to "hold off" on sending the Boulevard nuisance order. Indeed, Agent Bisbee testified that he did not know of the pending nuisance orders, though he knew about Tukwila's attempts to purchase the properties. In any case, the United States does not have the ability to send out nuisance orders, and so nuisance orders are not a "less restrictive alternative" to seizure.

In any case, additional nuisance orders would have been ineffective. The three Claimant Owners were operating as a group, and the nuisance order against the Great Bear did little to stymie the alleged illegal activities at that motel. At the hearing, it was stated that Lakhvir Pawar was the manager of the Ramada Inn. The ATF believes that the Ramada Inn is used to launder illegal proceeds recovered from the three "target" motels. (Dkt. No. 1 at 43, ¶ 91.) Both Kulwinder Saroya and Jaspal Singh appear to have ownership interests in the Ramada. (*Id.* at 12–13, ¶¶ 9–14.) The Ramada, as well as Jaspal Singh and Kulwinder Saroya—and numerous other individuals—all contributed money to the purchase of the Great Bear. (*Id.* at 42, ¶ 90.) Finally, Kulwinder Saroya's statement regarding the practice of charging a ten dollar entrance fee implicates the managers of all three motels. (*Id.* at 22, ¶ 40.) Together, this evidence strongly suggests that these three Claimant Owners were operating as a group. Thus, because the nuisance order was useless with respect to the Great Bear, there is no reason to believe that it would be successful if applied to the Boulevard or the Traveler's Choice, where all three motels were operated by the same group, using the same techniques.

The Court finds that the government has demonstrated that there were no "less restrictive measures such as a lis pendens, restraining order, or bond," 18 U.S.C. § 985, that would suffice to protect the government's interest in preventing illegal activities at the three motels.

## III. CONCLUSION

For the foregoing reasons, Claimants' motion for the return of property (Dkt. No. 10) is DENIED. The Court finds that there is probable cause to believe that the property will be subject to forfeiture, and that exigent circumstances exist because less restrictive alternatives such as a lis pendens, restraining order, or bond would be insufficient to protect the government's interest in preventing future unlawful use of the property.